Frank McAnally, Appellant, *v.* Pennsylvania Railroad Company.

[Marked to be Reported.]

*Negligence—Railroads—Sudden emergency—Gatemen and travelers.*

Where a person who is about to cross a railroad track is suddenly confronted by a train, and retreats to a position which he deemed safe, and which in fact was probably safe, and the gateman having a different view runs forward with a warning to " Get back," and finding his warning disregarded, attempts to force him back, and in the struggle the person is thrown and injured by a passing train, his resistance is the proximate cause of the injury, and the railroad company is not liable for the injury, and a nonsuit is properly entered.

Argued Jan. 20, 1899. Appeal, No. 314, Jan. T., 1898, by plaintiff, from order of C. P. No. 1, Phila. Co., June Term, 1896, No. 206, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. STERRETT, C. J., and MITCHELL, J., dissent.

Trespass for personal injuries.

At the trial the court entered a compulsory nonsuit, BRÉGY, J., filing the following opinion:

This is rather a remarkable case. It presents these conditions, according to the testimony of the plaintiff, that he came down one of the streets of the city (Gray's Ferry road) on the pavement, past a place where the safety gates were, and approached the railroad track of the defendant company without

hearing any notice of the approach of any train; that there was a high fence immediately to his left, in the direction in which the train was approaching, and that when he got clear of that fence, which was within a very few feet of the railroad track, he looked to the east—to his left—and saw a train of cars approaching. He says he was then about half a foot from the track. He stepped back a step or two until he got into what he considered was a position of safety, and which, probably, from subsequent events, was a place of safety, because the locomotive and some few cars passed him, and he was perfectly safe. While he was standing in that position, the safety gates in the mean time having been lowered behind him, the flagman, who was on the other side of the street, to his right, came running across the street towards him, calling to him to " Get back; get back." The plaintiff, feeling that he was in a position of safety at that time, or rather, thinking that he was not obliged to move at the request of anybody, stood still. The flagman approached him still with those exclamations, and, being a one-armed man, he threw his arm around his neck and tried to pull him away. A struggle then ensued, in which they both fell to the ground, the plaintiff underneath, and in the struggle they approached nearer the railroad track; one of the plaintiff's legs was extended and the remainder of the train ran over his leg and cut his leg off.

If this was an unprovoked, an unnecessary, uncalled for assault and battery by the flagman on the plaintiff, of course, that would be a matter which the railroad company would not be responsible for, but I do not think we can consider that at all. There is nothing to justify that, because we have to take the facts in a case with some knowledge of the affairs of life and what actually takes place in life, and I do not think it is either legal or sensible to shut our eyes to every surrounding question and simply say this was the action of the flagman and, therefore, say it was an assault and battery. I do not think there would be any justification to look at it in such a way, but if there is such a view possible, of course, that would relieve the defendant company. I think it shows at the best for the plaintiff a case where a man was in a position close to a train of cars, where possibly he might have had a legal right to have stood his ground, but that a watchman entertaining a different view of the safety of his position, both for him-

self and the safety of the people on the freight train, for some reason or other ran across the street, evidently intending to save this man or the train hands from disaster, and told him to "Get back; get back." There was no evidence that any motive animated that watchman, except the motive to protect all persons from harm—perhaps a mistaken idea of what was absolutely necessary at that time, but at least it is an indication that that was the idea or thought at the time. This plaintiff did not heed that request. Therefore two questions arise, it strikes me, whether this was a mistaken idea on the part of the watchman —whether in the emergency of that moment, seeing a man standing within a very few feet at the most of a railroad track at night, and a train of cars coming, it was a mistaken idea for him to say to the man, "You must get back," and whether that was an exceeding of what he ought to have done under all the circumstances—whether it would be wise to hold him to such a mistake even if it did occur. In other words, whether a mistake of judgment under such circumstances can be called negligence.

I have very grave doubts as to that, but I have a great deal less doubt about the wisdom of the judgment of the plaintiff, who, when he is called to get back, being in a place where a very few feet would risk his life—whether he had a right to exercise the judgment that he would not move, but would engage in a tussle with a man so close to an approaching train as that. I think any man who would do that has not done what he ought to have done under the circumstances. The duty that the law imposes is that a man should act as a prudent and ordinary careful man should act under such circumstances. Now, would any prudent man, with due regard to his own safety, and regard to the safety of others, if he was as close to a railroad track as this plaintiff says he was, with a train of cars in the act of going by—would any prudent man stand upon his rights and obstinately say, I won't move; I will rather resist and engage in a tussle and struggle with a man who asks him to move, rather than move? I do not think any prudent, careful man would do that, and I think if there is any negligence at all on the part of the watchman, the defendant, there is contributory negligence on the part of the plaintiff. If you say there is no negligence on the part of the defendant; that you cannot hold him to a mistake, if it was a mistake of judgment,

which he was compelled to exercise so hastily and under such threatening circumstances, why, then, of course there is no liability on the part of the defendant. Either view would result in a nonsuit, which is entered.

The court subsequently refused to take off the nonsuit.

*Error assigned* was refusal to take off nonsuit.

*A. S. Ashbridge, Jr.*, for appellant.—There can be no doubt that the defendant was guilty of negligence in not giving any warning of the approach of the train, and in permitting the safety gates to remain up or open until the train was practically at the crossing. This was the first act of negligence which led the plaintiff into the position of proximity to the train, which position the watchman considered so dangerous as to warrant the use of bodily force in removing the plaintiff from it. To say that the watchman did the best thing that he could do, after he found the plaintiff in this position, which he deemed dangerous, should not serve to excuse the defendant from the initial acts of negligence which led the man into the trap, if the position was so dangerous as to warrant his ejectment therefrom. If, on the other hand, the position was one of safety, then the act of the flagman in attempting to exclude the plaintiff from the space between the safety gates and the track was unwarranted, the defendant company having no right to remove the man from the highway if that man was in a place of safety, even though the defendant had arbitrarily assumed control of the intervening space.

The authorities do not hold a man who is placed in a position of sudden peril to the exercise of that nice judgment which otherwise a man is called upon to use: Penna. R. Co. v. Werner, 89 Pa. 59; Pittsburg, etc., R. R. Co. v. Rohrman, 13 W. N. C. 258; Aiken v. Penna. R. Co., 130 Pa. 380; Vallo v. Express Co., 147 Pa. 404; O'Toole v. Pittsburg, etc., R. R. Co., 158 Pa. 99.

*George Tucker Bispham*, for appellee.—The plaintiff was guilty of negligence, in that while in a position of actual or extremely probable danger, he gave no heed to the warning of

the gateman to stand back or get back, but, on the contrary, told the gateman himself to get back, and chose to engage in a personal struggle with the gateman when the latter attempted to pull him away: Mann v. Traction Co., 175 Pa. 122; Bard v. Traction Co., 176 Pa. 97; Mitchell v. Stewart, 187 Pa. 217.

There was no proof that the gateman acted negligently in the discharge of any duty as defendant's employee. The utmost extent to which the evidence goes is that the gateman made an honest effort to rescue the plaintiff from a position of danger. Under this head there are three possible views which might be taken of the evidence:

The first view is that the gateman acted maliciously. If any such notion could possibly be entertained then the company would certainly be not responsible: Scanlon v. Sutor, 158 Pa. 275; Penna. R. Co. v. Toomey, 91 Pa. 256.

Second, the plaintiff may be regarded as having been in a position of actual danger. If he was, then the gateman, in endeavoring to remove the plaintiff from such a position, was acting in the line of humanity, if not in the actual line of his duty, and if an accident happened in such an emergency and when sudden action was demanded, the defendant cannot be responsible for consequences: Floyd v. P. & R. R. R. Co., 162 Pa. 29; Donahue v. Kelly, 181 Pa. 93.

The third and only remaining supposition which can be made is that, although the plaintiff may not have been in a position of actual danger, yet the gateman honestly believed that he was in danger, and the action of the gateman in such an emergency, and the defendant's responsibility therefor, falls within the ruling of the cases just cited. In other words, the defendant cannot be held responsible for the action of its employee which he was compelled suddenly to take, because the plaintiff had voluntarily chosen to keep himself in a position of peril or of apparent peril. See in this connection Oberdorfer v. P. & R. R. R. Co., 149 Pa. 6.

OPINION BY MR. JUSTICE McCOLLUM, February 5, 1900:

This is a case of which it may well be said that nothing exactly like it appears in the reports. It must be conceded, however, that the principles applicable to the facts established by the testimony are well settled and plain. The plaintiff, intending to

cross the railroad tracks entered upon the space between the safety gates and the nearest rail, before the gates were lowered. The distance from the gates to the rail was about eight feet. When the plaintiff came within six inches of the rail he saw a freight train approaching from the east. He testified that he thought the engine of the train was then from fifteen to twenty feet from where he was when he first saw it, and that the train was then running, as he thought, at the rate of twenty or twenty-five miles an hour. Of course, his estimate of the distance of the locomotive from him and of the speed of the train was a mere guess. According to his testimony he could not see a train coming from the east until he had passed the high board fence east of the sidewalk and within three feet of the nearest rail. The safety gates were then closed; he made no effort to pass under them, as he might have done, or to go back from the rail to them, but he stepped back from the rail and toward the high board fence. His distance from the rail to the point where he stopped is not definitely defined by the testimony, but it is certain that the gateman regarded his position as perilous and did all in his power to rescue him from it. As his calls to the plaintiff to " Get back " were disregarded, he sought by force to compel him to get back, but he was met by a stubborn resistance which resulted in the injury for which this suit was brought. It was barely possible that the plaintiff might have escaped injury from the train at the point where he stood when he was called to get back, but the appearances and probabilities were against this view, and the effort of the gateman to remove him to a place of safety was fully justified by them. There is nothing in the evidence to create a belief or authorize an inference that the gateman in his efforts to remove the plaintiff from the danger to which he was exposed was prompted by anything more than humane motives and a sense of duty. The plaintiff, on the contrary, disregarded his plain duty under the circumstances and stubbornly resisted the efforts made for his protection. Compliance with the call to " Get back " was all that was required of him, and it was noncompliance with it which led to the injury of which he complains. Instead of yielding to the efforts of the gateman to rescue him he resisted them, and thus precipitated the casualty which the unresisted efforts of the gateman would have prevented. The resistance he made to the gateman's efforts to save him

from harm appears to have been the direct and proximate cause of the injury he received.

The omission of the train men to ring the bell, blow the whistle, or check the speed of the train was not the proximate cause of the casualty; nor was the failure of the gateman to lower the gates before the plaintiff passed them the cause of it. The plaintiff saw the train approaching in time to avoid dangerous proximity to it, and the avoidance would have been easy and certain if he had conformed to the instructions or acquiesced in the efforts of the gateman in his behalf. But his disregard of the former and resistance of the latter were in defiance of both, and inexplicable.

There is no evidence in the case showing that the conduct of the gateman toward the plaintiff was wilful, wanton or malicious; and if there had been such evidence the company would not be responsible for the consequences of such conduct without proof that the company had instigated or authorized it: Penna. Company v. Toomey, 91 Pa. 256; Scanlon v. Sutor, 158 Pa. 275. " An act done upon a sudden emergency when life is apparently in peril is not negligent even though it be mistaken: " Floyd v. Phila. & Reading Railroad Co., 162 Pa. 29; Donahue v. Kelly, 181 Pa. 93; Oberdorfer v. Philadelphia & Reading Railroad Co., 149 Pa. 6.

A careful consideration of the evidence of the case has convinced us that the learned court below did not err in entering a compulsory nonsuit and refusing to take it off.

Judgment affirmed.

MR. JUSTICE MITCHELL, dissenting:

The plaintiff discovering the approaching train stepped back to a place he thought safe. It was a place with a narrow margin from danger, but, as the evidence indicates, it was in fact safe. The learned judge below so treats it, as he says it " probably, from subsequent events, was a place of safety, because the locomotive and some few cars passed him and he was perfectly safe." While in that position the gateman, having a different view, ran towards him with a warning to " Get back," and finding his warning disregarded, seized hold of the plaintiff, who in the tussle, was thrown and had his leg cut off by the train. The act of the gateman was in clear excess of his authority. His right

terminated with the warning which he saw was intentionally disregarded. Plaintiff chose to stand on his own judgment. He had a right to do so. He was not a passenger who had committed himself to train or boat and was bound to obey the officers in charge, but was a citizen in the exercise of his right of travel on a public street. Whether his act was wise or foolish, it was his right, and he would have taken upon himself the risk of the consequences.

The act of the gateman was a trespass, and as it was in the course of his employment the defendant was liable for it. Even under the most favorable view it was for the jury to say whether under all the circumstances his act was not negligence.

I would reverse the judgment and send the case to a jury.

STERRETT, C. J., joins in this dissent.