## Artherholt v. Erie Electric Motor Company, Appellant.

*Steam railways—Passengers—Carriers—Attack by conductor on passenger —Damages.*

The duty of a carrier through its servants to prevent injury to passengers from the acts of third persons which it is practicable for the servants in charge to prevent, includes protection against, the active participation of the servant himself in an unprovoked and wanton assault upon a passenger, committed while he was being transported, and while the servant is engaged in executing the contract of carriage.

In an action by a passenger against a street railway company to recover damages for personal injuries, the case is for the jury where there is testimony from which the jury can find that the conductor, being angered by the plaintiff ringing the signal bell, or by mistake pulling the cord which registered fares, made a wanton and malicious assault upon him, which was neither instigated nor authorized by his employer, but was in violation of the standing rules of the company requiring the conductors to treat passengers civilly.

Exemplary damages may be recovered by a passenger from a street railway company for injuries caused by a wanton and wilful attack on the passenger by a conductor while the passenger is in the car and the conductor is engaged in the performance of his duty.

The fact that a passenger in a street car, who was unable to get the attention of the conductor, negligently pulls the cord which registers fares, instead of the cord which rings the signal bell, is not a defense in an action by the passenger against the company for injuries sustained from a wanton and wilful assault by the conductor.   The assault in such a case is not such a natural and probable consequence of the negligence that it might and ought to have been forseen as likely to follow the act, and it cannot therefore be said to have contributed proximately to the injury.

In an action by a passenger against a street railway company to recover damages for personal injuries sustained by an unjustified and wanton assault by a conductor, evidence as to the plaintiff's pain, physical condition and attendance by a physician after suit brought, is admissible to show the severity of the assault, although the statement does not claim damages for permanent injuries.

Argued May 16, 1904.   Appeal, No. 117, April T., 1904, by defendant, from judgment of C. P. Erie Co., Feb. T., 1903,

No. 12, on verdict for plaintiff in case of John R. Artherholt
v. Erie Electric Motor Company.   Before RICE, P. J., BEAVER,
ORLADY, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before
THOMAS, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

At the trial the court admitted under objection and excep-
tion evidence as to the pain and physical suffering of the
plaintiff, and also as to the attendance of a physician upon
him.  (1–5.)

Defendant presented amongst others the following points :

2. Under all the evidence in the case the verdict must be in
favor of the defendant.   *Answer :* This point is refused.  [12]

2½. If the jury find from the evidence that the conduct of
the conductor toward the plaintiff was wilful, wanton and ma-
licious, under all the evidence in the case the plaintiff cannot
recover.   *Answer :* This point is refused.   It is a question for
you to determine.  [13]

3. If the plaintiff is entitled to recover at all he can only
recover compensatory damages, and plaintiff having failed to
show that he has actually sustained any loss your verdict must
be in favor of the defendant.   *Answer :* This point is re-
fused.  [14]

3½. If the jury find from the evidence that the conduct of the
conductor towards the plaintiff was wilful, wanton and mali-
cious, the defendant cannot be held in this action responsible
therefor, unless the jury further find that the defendant insti-
gated or authorized such conduct.   *Answer :* This point is re-
fused.   It is not necessary that the defendant advised or
instigated the conduct of the conductor, or approved of it af-
terwards.  [15]

4. No damages can be recovered in this action except those
resulting from the acts which the conductor was duly author-
ized by the defendant to do and perform.   *Answer :* This point
is refused.  [16]

5. The presumption of law is in favor of innocence, and the
burden of proof is upon the plaintiff to show by the weight of
the evidence that the defendant company authorized an assault
to be committed upon the person of the plaintiff, and if the

jury find that the plaintiff has failed to overcome said presumption of innocence by such evidence, then and in that case your verdict must be in favor of the defendant. *Answer :* This point is refused. [17]

6. If the jury find from the evidence that the defendant did not authorize the conductor to commit an assault upon the plaintiff, then and in that case your verdict must be in favor of the defendant. *Answer':* This point is refused. [18]

Verdict and judgment for plaintiff for $800. Defendant appealed.

*Errors assigned* amongst others were (1–5) rulings on evidence, quoting the bill of exceptions; (12–18) above instructions, quoting them.

*J. M. Sherwin,* with him *S. A. Davenport,* for appellant.—No evidence of damage should have been admitted except of damages claimed in the declaration. It certainly cannot be the law that a passenger can commit any act he sees fit towards an employee accompanied by wilful and malicious conduct, and having been guilty of provoking an attack, claim damages in consequence thereof: Scott v. Central Park, etc., R. R. Co., 53 Hun, 414 (C. N. Y. Supp. 382); Jennings v. Union Traction Co., 206 Pa. 31; Railroad Co. v. Aspell, 23 Pa. 147; Krum v. Anthony, 115 Pa. 431; Catawissa R. R. Co. v. Armstrong, 49 Pa. 186; Mattimore v. Erie City, 144 Pa. 14.

The law in Pennsylvania, where a common carrier is a defendant, is that the plaintiff can only recover such compensation for loss and damage as the evidence shall clearly prove to have been pecuniarily suffered or sustained: Act of April 4, 1868, sec. 2, P. L. 58; Pittsburg's Petition, 138 Pa. 401; Keil v. Gas Co., 131 Pa. 466.

The conductor was not acting in the line of his employment and the company is not liable: McAnally v. Penna. R. R. Co., 194 Pa. 464; Rudgeair v. Reading Traction Co., 180 Pa. 333; Penna. Co. v. Toomey, 91 Pa. 256; Lake Shore & Michigan Southern Ry. Co. v. Prentice, 147 U. S. 101 (13 Sup. Ct. Repr. 261); Milwaukee, etc., Ry. Co. v. Arms, 91 U. S. 489; Cleghorn v. R. R. Co., 56 N. Y. 44; Priest v. R. R. Co., 65 N. Y. 589; Southern Express Co. v. Brown,

67 Miss. 260 (7 So. Repr. 318) ; Rouse v. Metropolitan St. Ry. Co., 41 Mo. App. 298 ; Hagan v. Providence, etc., R. R. Co., 3 R. I. 88.

*John B. Brooks,* with him *John S. Rilling, Henry E. Fish* and *Paul A. Benson,* for appellee.—Unwarrantable assault upon passengers by the servants of the carrier are breaches of the implied contract of the carrier to convey the passenger safely to his destination, and as such imposes a liability upon the carrier to pay damages. The principal in this class of cases is liable for the misconduct of the employee when it occasions injury to the passenger, whether arising from malice or from neglect: Goddard v. Grand Trunk Railway Co., 57 Maine, 202 ; Knoxville Traction Co. v. Lane, 46 L. R. A. 549 ; Duggan v. B. and O. Railroad Co., 159 Pa. 248 ; Pittsburg, etc., Railroad Company v. Pillow, 76 Pa. 510.

For this act of Nelligan, done while in the course of his employment as conductor, his principal is liable, even though what he did was not authorized or approved of by the company, as the following cases will clearly show: McFarlan v. Pennsylvania Railroad Company, 199 Pa. 408 ; McClung v. Dearborne, 134 Pa. 396 ; Lynch v. Ry. Co., 90 N. Y. 77 ; Brennan v. Merchant & Co., 205 Pa. 258.

Exemplary damages may be given against the principal for injuries inflicted by its servants wilfully or maliciously, whether authorized or ratified or not: Knoxville Traction Company, v. Lane, 46 L. R. A. 549 ; Goddard v. Grand Trunk Railway Co., 57 Maine, 202 ; Milwaukee, etc., Ry. Co. v. Arms, 91 U. S. 489 ; Drew v. Peer, 93 Pa. 234 ; Lake Shore, etc., Ry. Co. v. Rosenzweig, 113 Pa. 519 ; Pittsburg, etc., Ry. Co. v. Lyon, 123 Pa. 140 ; Philadelphia Traction Company v. Orbann, 119 Pa. 37.

OPINION BY RICE, P. J., January 17, 1905 :

The testimony of the plaintiff was to the effect that he paid the fares of himself and wife and told the conductor that they wanted to get off at the switch between Myrtle and Chestnut Streets, which was a regular stopping place established by the defendant company ; that when the car reached the switch, the plaintiff arose and said to the conductor, who was standing at the rear end of the car, that this was the place where he and

his wife wanted to get off; that the conductor did not attend to his request but walked to the front end of the car and stood looking out at the motorman with his back to the passengers; that when they reached Chestnut street the plaintiff, being unable to attract the attention of the conductor, and having reason to apprehend from the speed of the car and the actions of the conductor that he and his wife would be carried past that crossing also, pulled the bell cord and the car came to a sudden stop several feet beyond the usual place of alighting at Chestnut street. What happened then was thus described by the plaintiff, his wife testifying substantially to the same effect: " As I pulled the bell cord he flew, and he says, ' God damn you, I will fix you,' and back he came and struck me in the forehead, and he jammed them right into me. I warded off the blows the best I could and he then commenced kicking me and kicked me in the stomach, and went to kick me again and I threw down my hand and broke the blow and my wife caught him by the lapel of the coat and hollered ' John, don't fight,' and the ladies jumped and yelled, and that kind of broke up the fight." The plaintiff was about fifty years old whilst the conductor was but about twenty-three and a larger and stronger man. Some light is thrown on the latter's conduct by the testimony of another witness called by the plaintiff who swore that the conductor said at the time he made the assault "I will pay you for that; you rung up three fares." The version of the affair given by the conductor and the other witnesses called by the defendant differed from the foregoing in many material particulars. But we need not at this time discuss the conflict of evidence thus raised. It is sufficient for present purposes to say that there was testimony from which the jury could have found that the conductor, being angered by the plaintiff ringing the signal bell, or by mistake pulling the cord which registered fares, made a wanton and malicious assault upon him which was neither instigated nor authorized by his employer but was in violation of the standing rule of the company requiring the conductors to treat passengers civilly. Two legal questions arise upon this state of facts: First, was the defendant liable in damages for the injuries thus inflicted on the plaintiff? Second, was it proper to permit the jury to award punitive damages?

1. The responsibility of a common carrier for the tortious acts of its servants affecting passengers being transported, does not rest alone upon the doctrine respondeat superior. When a passenger has entered a car of a street railway company and has paid his fare, a quasi contractual relation is established whereby the company assumes certain duties from responsibility for the breach of which it cannot discharge itself by prescribing rules for the government of the conduct of its servants. True, common carriers do not, in legal contemplation, warrant the absolute safety of their passengers, but they are bound to the exercise of the utmost degree of diligence and care, and it has been held that this duty includes the exertion of such power as conductors and other trainmen have to protect passengers from violence of other persons. Many of the cases bearing upon this question were reviewed in Duggan v. Baltimore & Ohio R. R. Co., 159 Pa. 248, where the present Chief Justice said : " The conductor has general power and control over the train and all persons on it, with authority to compel observance of the regulations of the company, to preserve order, and to employ the whole force of the trainmen, and of passengers willing to assist, for these purposes. These extensive powers involve the correlative duty to protect passengers, not only from injury by negligence or accident, but also from violence and illegal annoyance or interference by other parties." The motive, whether unwarranted fear or sympathy with the wrongdoer, which impels those to whom a carrier has intrusted the safe carriage of persons or property to refrain from the exertion of this power is immaterial. This is well illustrated in Lang v. Penna. R. R. Co., 154 Pa. 342. A train containing several carloads of whisky was overtaken by the Johnstown flood, but was not swept away. The train was left upon the track and the cars were uninjured, but owing to the destruction of the track ahead it could not resume its journey. While the train was waiting for the track to be repaired, thieves, in open daylight and in presence of the trainmen who made no resistance, broke open the cars and seized some of the whisky. Speaking of one of the witnesses who had testified that he did not interfere to save the cars and their contents because he " had no orders to do so," Mr. Justice WILLIAMS said: " Whether he and others like him were cowards shivering

with fear in the presence of a few thieves whom unarmed citizens drove away, or were thieves at heart and in full sympathy with those who were trying to loot the cars that they should have defended, is a matter of no consequence. In either case they neglected their obvious duty. The railroad company was represented in the carriage and safe keeping of the freight on the train by the men to whom the train had been committed. If they deserted their posts and left the goods uncared for, and they were stolen or destroyed, their employer must suffer for their inefficiency." If the duty of the carrier to afford protection, which he is to discharge through his servants, extends to the prevention of injury from the acts of third persons which it is practicable for the servant in charge to prevent, it is difficult to see why it should be held not to include protection against the active participation of the servant himself in an unprovoked and wanton assault upon a passenger, committed while he is being transported, and while the servant is engaged in executing the contract of carriage. According to the great weight of authority the carrier is responsible for such misconduct of the servant to whom it has intrusted the safe carriage of passengers (see 6 Cyclopedia of Law and Procedure, 600, and cases there cited), and none of the Pennsylvania cases cited by the appellant's counsel upon this point hold a different doctrine. Allegheny Valley Railroad Co. v. McLain, 91 Pa. 442, was decided upon a question of pleading, and McAnally v. Penna. R. R. Co., 194 Pa. 464, as well as most of the other cases cited, relate to the question of the responsibility of the master for the wanton or malicious acts of his servant, committed outside the scope of his employment, against persons holding no contractual relation with the master in which is implied the duty of protection against such acts. But even in such cases it has been said : " The master who puts the servant in a place of trust or responsibility, and commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another : " Rounds v. Delaware, etc., R. R. Co., 64 N. Y. 129. The foregoing was quoted with ap-

proval by Justice MESTREZAT in Brennan v. Merchant & Co., 205 Pa. 258, and is certainly the true rule as between a common carrier and a passenger.

2. We agree with all that the appellant's counsel say as to the duty of the court not to permit a recovery of exemplary damages from a master for injuries inflicted by a servant, which the master neither authorized nor approved, except in a very clear case; but we cannot say that such damages may not be recovered in Pennsylvania, nor that it was error to permit them to be recovered in the present case. In Lake Shore, etc., Ry. Co. v. Rosenzweig, 113 Pa. 519, the law upon the subject was thus stated by Justice TRUNKEY: "The liability of railway and other corporations to exemplary damages for gross negligence is well settled. The general rule in cases for negligence is that only compensatory damages can be given. Juries are not at liberty to go farther than compensation, unless the injury was done wilfully or was the result of that reckless indifference to the rights of others which is equivalent to a violation of them. There must be wilful misconduct, or that entire want of care which would raise a presumption of conscious indifference to consequences: Milwaukee & St. P. Ry. Co. v. Arms, 91 U. S. 489. The corporation is liable for exemplary damages for the act of its servant, done within the scope of his authority, under circumstances which would give such right to the plaintiff as against the servant were the suit against him instead of the corporation." In Phila. Traction Co. v. Orbann, 119 Pa. 37, Justice CLARK, said: "It seems to be settled by the preponderance of authority in this country, that, in actions against corporations for injuries received through the negligence of their servants, exemplary damages may be recovered when the injuries are wanton and malicious, or are inflicted in a gross or outrageous manner, whether the act was previously authorized or subsequently ratified by the corporation or not." Later in his opinion he intimated that there were grave doubts as to the propriety of the rule, but he nevertheless conceded that if the doctrine of the Rosenzweig case is to be adhered to "the responsibility of a corporation in exemplary damages for the wanton and wilful acts of its servants is clearly established in Pennsylvania." It is our plain duty to adhere to it until it is distinctly overruled, and although it

is evident from the concluding remarks of Justice WILLIAMS in Keil v. Chartiers Valley Gas Co., 131 Pa. 466, that he did not view it with favor yet we do not think that we would be justified in concluding that the decision upon this point in the Rosenzweig case was intended to be overruled. Indeed, neither that case nor the Orbann case was mentioned by him. It is to be observed further that both of these cases were decided long after the passage of the Act of April 4, 1868, P. L. 58, and it is scarcely conceivable that this act was overlooked by court and counsel in cases so bitterly contested. The reasonable supposition is that the second section was deemed to have no bearing upon the question of exemplary damages or to have been abrogated by sec. 21, art. III. of the constitution.

3. The defendant's counsel presented several points one of which was to the effect that if the jury found from the evidence that the plaintiff first assaulted the conductor he could not recover. This was the only point submitted upon the question of contributory negligence and it was affirmed. Moreover, the learned judge in his general charge instructed the jury clearly and unequivocally to the same effect. It is now argued, although no such request was made at the trial, that the court erred in not stating to the jury that in order to recover the plaintiff must be without fault. "If, in disregard of this principle (we quote from the appellant's brief), the plaintiff pulled the bell cord, which he had no right to do, by doing so he was guilty of a trespass against the defendant, and if that trespass contributed to the damage which he subsequently sustained he cannot recover." We cannot give our assent to this proposition. Grant that the plaintiff was negligent in pulling the wrong cord, yet as the subsequent assault was not such a natural and probable consequence of the negligence that it might and ought to have been foreseen as likely to follow the act, the act cannot be said to have contributed proximately to the injury. So far as this branch of the case is concerned it comes fairly within the principle laid down by Doctor Wharton in his work on Negligence at section 302, which was quoted and followed in Thirteenth, etc., Street Pass. Ry. Co. v. Boudrou, 92 Pa. 475. See also Sharrer v. Paxson et al., 171 Pa. 26.

4. The plaintiff did not claim in his statement, damages for

permanent injuries and the court carefully instructed the jury that they should confine their award to such damages as he had sustained prior to bringing suit. The declared purpose for which the testimony as to his pain, physical condition and attendance by physician after suit brought was offered was simply to show the severity of the assault. We think it was competent for that purpose and that in view of the instructions given to the jury there is no reasonable ground for assuming that they allowed the plaintiff damages for pain, suffering and medical attendance after suit brought.

We do not deem it necessary to discuss the assignments of error in detail. We have passed upon the questions raised by them which seem to call for comment by us. Our conclusion is that no error was committed for which the judgment ought to be reversed. Therefore the assignments are overruled and the judgment is affirmed.