# Pittsburg and Connellsville Railroad Co. *versus* Pillow.

1. The slightest degree of negligence on the part of a conductor of a car resulting in injury to a passenger without fault on his part will render the company liable.

2. When a passenger carried on a train is injured without fault of his own, there is a legal presumption of negligence by the carrier and the onus to disprove it is on the carrier.

3. The presumption can be rebutted by showing that the injury arose from an accident which the utmost skill, foresight and diligence could not prevent.

4. Conductors on cars have control over the passengers and are as responsible for its exercise as for properly running the train.

5. Drunken men should not be permitted on the cars, or if so, should be so guarded or separated from the orderly part of the passengers as to prevent injury from them.

6. It is the duty of passenger carriers to repress all disorderly and indecent conduct in their cars and persons guilty of rude or profane conduct should be at once expelled.

7. Pittsburg, Fort Wayne & Chicago Railroad Co. *v.* Hinds. 3 P. F. Smith 512; Laing *v.* Colder, 8 Barr 482; Meier *v.* Pennsylvania Railroad Co., 14 P. F. Smith 295, adopted.

November — 1874. Before Agnew, C. J., Sharswood, Williams, Mercur and Gordon, JJ.

Error to the Court of Common Pleas of *Allegheny county:* Of October and November Term 1874, No. 75.

To the September Term 1873 of the court below, Matthew H. Pillow brought an action on the case against The Pittsburg & Connellsville Railroad Company, for negligence by the servants of the company, in not suppressing a fight in one of their cars in which the plaintiff was a passenger, which resulted in the loss of his eye.

The case was tried, February 18th 1874, before Collier, J.

The circumstances of the case, as alleged by the plaintiff, appear by his testimony.

He said that he took a seat at Broadford station on the Mount Pleasant Branch railroad, in the evening of the 27th of February 1873.

"The conductor pulled the train out from the Broadford station on to what was known as the Y at Broadford; the train consisted of one passenger car and one baggage car when it left the station and went on the Y. After pulling out on the Y, the locomotive was cut loose and went up the track some distance, and went to work drilling out freight cars on the side track. I was aboard this passenger car, sitting on the right hand side of the car, about the middle of the car, perhaps one seat back of the middle, as near as I can remember. I was in a seat by myself. I sat there some time, watching the process of drilling cars on this side track. During that time, or about the time, after they had been drilling

[Pittsburg & Connellsville Railroad Co. *v.* Pillow.]

some time, getting out freight-cars, my attention was attracted to a row or fuss back of me at the back end of the car. I turned around in my seat, with my back towards the window, and looked back at the fight, which was between an Irishman (I afterwards learned) and five young negroes—young men of perhaps twenty-one years of age; they were fussing together, using profane language, and jostling each other against the seats. Four of those colored men sat down, and one of them (the fifth) continued the fracas on the opposite side of the car from me, among the seats. During the fuss among the seats, the freight cars were brought back and attached to the train, and the train immediately started. About the time that the train started, they got to striking at each other, and cursing and swearing, and came out into the aisle. The white man stripped for a fight, took off his hat and coat; he was cleaned off all but his shirt and pants; he may have had his vest on, but he was certainly in his shirt sleeves, and his sleeves shoved up. He was standing with his back towards the car door. The conductor came in the front end of the car, and commenced collecting fare from all the passengers, and he came down along the aisle. This white man and negro were standing up in the aisle fighting, cursing and swearing, and fighting at each other; the colored man kept his coat on. The conductor came along down the aisle lifting the fare. I sat watching the conductor, and at the same time watching the fight, and wondering why it was not stopped or interfered with. As he was lifting the tickets from the various passengers, he would direct his eye back towards the fuss, as if he was watching it. Just as the conductor got opposite to me, I reached into my pocket, took out my pocket-book, and was in the act of getting my ticket, sitting with my back to the window, when some one of the party said, 'You have got a pistol, have you? You are going to shoot!' I raised my head and looked back, and that instant I was struck with a piece of glass. I jumped to my feet, and said, 'My God, men, how is this; that negro has put my eye out!' or some expression to that amount. As I was struck, the train was just stopping at Morgan station. It raised a tremendous commotion in the car. Some yelled to shoot the negro, and some to kill him; some one thing and some another. The conductor was just lifting the fare in the seat opposite me at the time. There was a large man sitting in the seat in front of me. The colored man bounded off the car and left. The man that sat immediately in front of me was threatening the conductor with violence, for permitting such rowdies aboard the train. I remarked to the man that the thing was done, the row was over, and to keep quiet."

He testified that there was much boisterous and disorderly conduct in the car, both before and after he was struck; also as to the extent of the injury, his suffering, &c.

Another witness testified as to the noise as of quarrelling amongst

[Pittsburg & Connellsville Railroad Co. *v.* Pillow.]

the persons in the back part of the car, that it was going on when the.conductor came in whilst he was taking the tickets; that as he passed along he occasionally looked back but did not interfere; when he came to the witness to take his ticket, witness said to him, " Why don't you put that negro off?" The conductor said he was not going to interfere and have his nose broke. A short time after that the bottle was thrown, the conductor might have had time to walk down. The talking was about fighting, and drunken talk.

There was other evidence detailing the occurrences with greater or less particularity; all tending to show that the persons making the disturbance were intoxicated and that there was much noise.

The defendants gave evidence tending to show, that the conductor, as soon as he could after he came into the car, endeavored to stop the disturbance and that the bottle was thrown before he could reach the persons who were making the disturbance.

The plaintiff's points were:—

1. If the injury received by plaintiff was without fault on his part, the law presumes it to have resulted from the negligence of the defendants through their employees, which presumption cannot be overthrown but by proof the employees exercised the utmost degree of diligence and care, and that the injury was the result of inevitable accident or irresistible force.

2. The slightest neglect on the part of a conductor, resulting in injury to a passenger, without fault on his part, will render the company liable.

3. The conductor of a passenger train is bound to exercise the utmost vigilance and care in guarding passengers from violence. In case of angry, threatening language he should not wait for the, overt act of violence, but should put the disorderly person out at once; and if he fail to do so, or to make the effort, and an innocent passenger is injured in the ensuing fight, the company will be liable.

The answers of the court to the plaintiff's points were as follows:—

" We answer the first and second points of the plaintiff as follows:

" The jury must be satisfied, from the weight of the evidence, that the negligence of the defendants' servant, the conductor, caused, or contributed to the injury the plaintiff received.

" If you believe that the conductor had notice of the fight, or that there was a disturbance of the peace taking place, or imminent, it was his duty to act promptly, and do all in his power to prevent or quell the disturbance at once. If he neglected to do this, and the plaintiff was injured thereby, the plaintiff can recover.

" The third point is affirmed."

The defendants' first point which was refused was:—

[Pittsburg & Connellsville Railroad Co. *v*. Pillow.]

"The plaintiff has not made out a case entitling him to recover, and that their verdict should be for the defendants."

The verdict was for the plaintiff for $3300.

The defendants removed the record to the Supreme Court by writ of error.

They assigned for error,

1. Refusing their first point.

2-4. The answers to the plaintiff's points.

*G. Shiras, Jr.*, for plaintiffs in error, cited Pittsb., Fort Wayne & C. Railroad Co. *v*. Hinds, 3 P. F. Smith 512.

There was no paper-book for the defendant in error.

Mr. Justice GORDON delivered the opinion of the court, January 4th 1875.

Upon a careful examination of the plaintiff's points we find them supported by the most ample authority, and hence conclude that the rulings of the court upon those points are throughout correct. In the case of Meier *v*. The Pennsylvania Railroad Co., 14 P. F. Smith 225, Justice Agnew quotes approvingly the language of Judge Bell, in Laing *v*. Colder, 8 Barr 482, wherein he says, speaking of the duties which common carriers owe to the passengers whom they carry: "But though, in legal contemplation, they do not warrant the absolute safety of their passengers, they are bound to the exercise of the utmost degree of diligence and care. The slightest neglect against which human prudence or foresight may guard, and by which hurt or loss is occasioned, will render them liable in damages." It is said further in the same case: "Primâ facie, where a passenger, being carried on a train, is injured without fault of his own, there is a legal presumption of negligence, casting upon the carriers the onus of disproving it."

This is the rule when the injury is caused by a defect in the road, cars or machinery, or by a want of diligence or care in those employed, or by any other thing which the company can and ought to control, as a part of its duty to carry passengers safely, but this rule of evidence is not conclusive. The carrier may rebut the presumption, and relieve himself from responsibility, by showing that the injury arose from an accident which the *utmost skill, foresight and diligence could not prevent.*"

We cannot perceive the force of the argument of the counsel for the plaintiff in error, wherein he endeavors to raise a distinction between accidents arising from negligence in the equipment or management of the train, and those arising from the misconduct of passengers upon it. If the employees of the road had no control or power over passengers, this argument would be sound. But they have such power, and they are just as responsible for its proper

26 P. F. SMITH—33

[Pittsburg & Connellsville Railroad Co. *v.* Pillow.]

exercise as they are for the proper running of the train.    That it should be so is most fully and forcibly exemplified in the present case.

The plaintiff lost his eye through the quarrel of a couple of drunken men, who should not have been permitted aboard the cars, or if so permitted, should have been so guarded or separated from the sober and orderly part of the passengers that no injury could have resulted from their brawls.    The duties and powers of conductors are very clearly pointed out by Justice Woodward in the case of The Railroad Co. *v.* Hinds, 3 P. F. Smith 512, in which he says : " They may stop their trains and call to their assistance, for the purpose of suppressing riotous conduct on board thereof, not only all the employees, but also all passengers that are willing to lend a helping hand, and until the utmost effort has been made for that purpose, the responsibility of the company, which they represent, for damage sustained by orderly passengers, remains."    We have a similar ruling in the case of Flint *v.* Norwich & New York Transportation Co., 34 Conn. 554, in which it is held that it is the duty of passenger carriers to repress all disorderly and indecent conduct in their cars, and that persons guilty of rude or profane conduct should be at once expelled.    Such is the doctrine of the books.    It is wise and good, and necessary for the protection and comfort of those who travel upon our railway lines, and who, from the very character of the means used for their transportation, are, during such transportation, almost wholly dependent upon the railway officers for their safety and well-being.

Judgment affirmed.