# Greb *v.* Pennsylvania Railroad Company, Appellant (No. 1).

*Master and servant—Trespass—Railroads—Passenger—Assault by trainmen.*

1. For a willful or intentional trespass by an employee outside of the line of his duty under his employment, the employer is not responsible even though it be committed while the servant was in the course of his employment; but in the latter case its willful and separate character must appear.

2. Where two passengers have alighted from a train, and while proceeding along the station platform are pursued by the baggage master and the conductor of the train which they left, and wantonly and maliciously assaulted, they cannot recover damages from the railroad company for the injuries sustained, inasmuch as the acts of the trainmen were outside of the scope and the range of their employment.

Argued April 14, 1909. Appeal, No. 230, April T., 1908, by defendant, from judgment of C. P. No. 1, Allegheny Co., June Term, 1904, No. 975, on verdict for plaintiff in case of Theodore F. Greb v. Pennsylvania Railroad Company. Before RICE,

P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ.
Reversed.

Trespass to recover for personal injuries. Before BROWN,
P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[The plaintiffs in this action allege that while leaving the
train and passing along the railway platform an unprovoked
assault was made upon them by the conductors or the agents
of the railway company.

If that be the fact, namely, an unprovoked assault, they are
entitled to recover damages for the assault and injury, the pain
and suffering, and in addition, at your discretion, punitive or
punishing damages.] [1]

[So you come down to the turning point in these cases. It
is alleged by the plaintiffs—and of course that is undisputed
—that they were passengers on this railway; that this trouble
occurred while leaving the train and passing along the platform.
That was part of the company property, just as much as though
it was the car in which they had been riding. A passenger had
the right to walk along the platform to get away from the com-
pany's property. If under those circumstances these plaintiffs
did not provoke this assault or injury by any misconduct on
their own part, and the thing resulted solely from the act of the
railway company's agents, then the plaintiffs may recover
damages.] [2]

[If this was an unprovoked assault by the agents of the de-
fendant, without any misconduct on the part of the plaintiffs
themselves, they would be entitled to recover.] [3]

[If the weight of the testimony satisfies you that there was
no misconduct on the part of the plaintiffs, that they did not
bring about the assault, did not take any part in it, then they
are entitled to recover. The elements of damage are such as
have been suggested to you by counsel in his argument to the
jury.] [4]

Defendant presented this point:

1. Under the pleadings and all the evidence, the verdict must be for the defendant. *Answer:* Refused. [5]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*James F. Miller*, with him *Patterson, Sterrett & Acheson*, for appellant.—The testimony of the plaintiffs' witnesses shows that the baggage man and the conductor, when they committed upon the plaintiffs the assault alleged, were acting outside of the scope of their authority: Brennan v. Merchant, 205 Pa. 258; McFarlan v. R. R. Co., 199 Pa. 408; Pass. Ry. Co. v. Donahue, 70 Pa. 119.

A common carrier is not liable when its servants (in these cases the baggage man and conductor) acting outside of the scope of their authority, and for purposes of their own assault a person who has safely alighted from a train and is proceeding along the station platform to the street: Artherholt v. Motor Co., 27 Pa. Superior Ct. 141; Dodge v. Steamship Co., 148 Mass. 207 (19 N. E. Repr. 373); Kennedy v. R. R. Co., 32 Pa. Superior Ct. 623.

*James M. Clark*, for appellee.—A very high degree of care is required of a common carrier as long as the passenger is on the train, and at what juncture this high degree of care is modified is of the utmost importance in determining these cases. It has been held that the railroad company is liable for a willful or intentional trespass by its employee, on the passenger who had not yet entered the train, but was on the platform about to so enter: McFarlan v. Penna. R. R. Co., 199 Pa. 408.

In support of our contention that the relation of the carrier and passenger had not ceased at the time the assault complained of in these cases was committed, we cite the cases of Powell v. R. R. Co., 220 Pa. 638; Keefe v. R. R. Co., 142 Mass. 251 (7 N. E. Repr. 874); Brennan v. Merchant & Co., 205 Pa. 258; Rounds v. R. R. Co., 64 N. Y. 129.

When a passenger has alighted from a train the relation of

carrier and passenger remains until he has left the premises of the carrier: Hall v. R. R. Co., 36 Pa. Superior Ct. 556; Guinney v. Hand, 153 Pa. 404; Brennan v. Merchant & Co., 205 Pa. 258.

Whether the negligent act was within the scope of the servant's employment is a question of fact for the jury: Guinney v. Hand, 153 Pa. 404; Laird v. Traction Co., 166 Pa. 4; Artherholt v. Motor Co., 27 Pa. Superior Ct. 141; Art Syndicate v. Ins. Co., 213 Pa. 506.

OPINION BY RICE, P. J., October 11, 1909;

This and the succeeding case are appeals from judgments in favor of Theodore F. Greb and Frank J. Greb. The cases were tried together. The plaintiffs in company with their brother Philip were passengers on the defendant's train from Swissvale to certain stations in Pittsburg. On reaching Wilkinsburg, the next station after Swissvale, there was some trouble over a ticket which Philip presented to the conductor, the result of which was that Philip was put off the train against the protests and objections of the plaintiffs. The train then proceeded on its way, and when it reached the station to which Theodore was destined he went out of the front door of the car to alight. He testified that as he did so C. W. Meek, the baggage master of the train, who was acting also as brakeman, and F. J. Arnold, the conductor, were standing on the platform of the car, and that the former accosted him in these words, "Do you want to take anything out of me?" to which he replied, "No, I ain't looking for a fight." He then alighted from the car and walked back, across one track, to the station platform. This led to the stairway going down to the street. He testified that Meek followed him and that when they were on the station platform— at a distance described by him as a car's length from the steps of the car from which he had alighted, and by another witness as thirty or forty feet from the train—Meek again accosted him with the words, "Here you son of a bitch, if you want to take anything out of me here I am;" to which Theodore replied, "No, I ain't looking for trouble." He says that as he then started to walk away Meek struck him a blow which knocked him down and rendered him unconscious, and that he re-

membered no more of the affair.  Frank J. Greb, the plaintiff
in the other case, testified that as he stepped out onto the rear
platform of the same car he saw Meek and Theodore "tussling"
on the station platform, that he went over and may have
grabbed Meek for the purpose of getting them apart, and that
Arnold, the conductor, came over immediately and struck him,
Frank, two or three times upon his head, inflicting scalp wounds.
We need not go into greater detail in describing the injuries the
plaintiffs claimed to have sustained.  Nor need we show wherein
the version given by the defendant's witnesses of the affair and
of its inducing cause differs irreconcilably in material particu-
lars from those given by the plaintiffs.  The verdict of the jury
interpreted in the light of the instructions given by the court
implies a finding, which for present purposes must be accepted
as conclusive, that neither of the plaintiffs provoked the as-
sault by any misconduct on his part.  But it must also be
borne in mind that according to the plaintiff's own showing the
assault did not occur on the train, or while the plaintiff was in
the act of entering or alighting from it, but upon the station
platform, and that there is no evidence that either of these
trainmen, as employees of the defendant, had any control over
that part of the railroad premises, or had any duty to perform
in respect of the passengers who had left the train at that place.

\A master is ordinarily liable to answer in a civil suit for the
tortious or wrongful acts of his servants, if those acts are done
in the course of his employment in his master's service. 'In
Brennan v. Merchant & Co., 205 Pa. 258, this statement of the
general rule as given by Mr. Justice ANDREWS in Rounds v.
Delaware & Hudson R. R. Co., 64 N. Y. 129, was quoted with
approval: "It is in general sufficient to make the master re-
sponsible that he gave to the servant an authority, or made it
his duty, to act in respect to the business in which he was en-
gaged when the wrong was committed, and that the act com-
plained of was done in the course of his employment.  The
master in that case will be deemed to have consented to and
authorized the act of the servant, and he will not be excused
from liability, although the servant abused his authority, or
was reckless in the performance of his duty, or inflicted an

unnecessary injury in executing his master's orders. The master who puts the servant in a place of trust or responsibility, and commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another." \Not every deviation of the servant from the strict execution of his duty, nor every excessive use of force therein, nor every disregard of particular instructions will be such an interruption of the course of employment as to determine or suspend responsibility. ∫ "But, where there is not merely deviation, but a total departure from the course of the master's business, so that the servant may be said to be 'on a frolic of his own' the master is no longer answerable for the servant's conduct:" Pollock on Torts (Bl. ed.), *74. "For a willful or intentional trespass by an employee outside of the line of his duty under his employment it is settled that the employer is not responsible, even though it be committed while the servant is in the course of his employment. But in the latter case, its willful and separate character must appear:" McFarlan v. Pennsylvania R. R. Co., 199 Pa. 408. The distinction in principle between the two classes of cases is well illustrated for present purposes by comparing McFarlan v. Pennsylvania R. R. Co. and Rudgeair v. Reading Traction Co., 180 Pa. 333. In the former the railroad company was held liable for an assault by the conductor upon an intending passenger in the act of entering the car, because he was within the authority and control of the conductor in the course of the latter's employment. In the other case a motorman who left his post of duty on his car and assaulted a teamster driving on the track ahead, who refused to turn off, was held not to be acting within the scope of his employment, and therefore the company was not liable. We refer also to this illustration in 2 Cooley on Torts (3d ed.), 1020: "So if a conductor of a train of cars leaves his train to beat a personal enemy, or from mere wantonness to inflict an injury, the difference between that and where a passenger is

ejected from the cars is obvious. The one is the individual trespass of the conductor he has stepped aside from his employment to commit; the other is a trespass committed in the course of the employment in the execution of the orders the master has given, and apparently has the sanction of the master and contemplates the furtherance of his interests." Leaving out of view the fact that the plaintiff in the case at bar was upon the defendant's premises and still had rights as a passenger (Powell v. Phila. & Reading R. R. Co., 220 Pa. 638; Hall v. Bessemer & Lake Erie R. R. Co., 36 Pa. Superior Ct. 556) and having regard only to the rule applicable generally to the question of the liability of a master for the tortious acts of his servants, it is quite clear that the plaintiff was not entitled to the instructions which are embraced in the first four assignments of error. This conclusion is supported by the decisions or the principles enunciated in other Pennsylvania cases, amongst which may be cited Pennsylvania Company v. Toomey, 91 Pa. 256; Scanlon v. Suter, 158 Pa. 275; McAnally v. Pennsylvania R. R. Co., 194 Pa. 464; Shay v. American Iron & Steel Co., 218 Pa. 172; Murphey v. Phila. Rap. Tran. Co., 30 Pa. Superior Ct. 87.

But in the case of an intentional or unprovoked assault by a servant of a common carrier upon a passenger the legal duties, which, by reason of the relation between them, are imposed upon the former, must be taken into consideration in determining whether he is liable; for it is obvious that he may be liable in such a case where he would not be liable for a similar assault committed by the same servant, at the same place and under the same circumstances upon a stranger. As to passengers being transported there is an implied contract on the part of the carrier, and a legal duty, to exercise the "utmost degree of diligence and care" for their safety, and it is settled that this duty includes the exertion of such power as conductors and the trainmen under them have to protect passengers from violence of other persons: Pittsburg, etc., Ry. Co. v. Hinds, 53 Pa. 512; Pittsburg, etc., R. R. Co., v. Pillow, 76 Pa. 510; Duggan v. B. & O. R. R. Co., 159 Pa. 248. Following this principle to its legitimate conclusion we said in Artherholt v. Erie Elect. Motor Co., 27 Pa. Superior Ct. 141, "If the duty of the carrier to afford

protection, which he is to discharge through his servants, extends to the prevention of injury from the acts of third persons which it is practicable for the servant in charge to prevent, it is difficult to see why it should be held not to include protection against the active participation of the servant himself in an unprovoked and wanton assault upon a passenger, committed while he is being transported, and while the servant is engaged in executing the contract of carriage. According to the great weight of authority the carrier is responsible for such misconduct of the servant to whom it has intrusted the safe carriage of passengers." In some of the cases outside this commonwealth the liability of the carrier in such case is put upon the ground that as against the violence and assaults of his servants the passenger, while being transported or when entering or alighting from the carrier's vehicle, has the right to claim "absolute protection." Prominent amongst these cases are Haver v. Central R. R. of N. J., 62 N. J. L. 282; Hayne v. Union St. Ry. Co., 189 Mass. 551; Birmingham Ry. & Elect. Co. v. Baird, 130 Ala. 334. There is great force in the reasoning by which this proposition has been supported, but as it does not present the precise question we have to decide it is unnecessary to consider whether, as respects a passenger while being transported and when entering or alighting from the carrier's vehicle, it is invariably applicable regardless of the nature and scope of the servant's duties and authority. It is to be observed, further, that this is not the case of a passenger when purchasing his ticket being assaulted by the ticket agent, or when checking or applying for his baggage being assaulted by the servant of the carrier connected with that part of his business, or when passing along the station platform on his way to or from the train being assaulted by the servants the carrier has employed to oversee the platform and enforce its regulations regarding their use. There would be reason for holding that in each of these instances, and similar ones that might be cited, there was a breach of a duty which rested on the carrier to protect the passenger against the assaults of its servants whilst engaged in the discharge of their assigned and appropriate duties, even though such assaults were unauthorized by the carrier and were

prompted by the vindictive feelings of the servant toward the passenger. But the proposition we have to consider is a much broader one and it amounts to this: It is the "absolute duty" of the carrier to protect the passenger against the assaults and violence of its servants, not only while the passenger is being transported, but so long as the relation exists, therefore if the passenger is anywhere on the carrier's premises legitimately as an intending or departing passenger, the range or scope of employment of the servant who committs an unprovoked, unlawful and malicious assault upon him is immaterial in determining as to the carrier's liability. That this is not an exaggerated statement of the legal proposition that must be adopted in order to sustain the rulings of the learned trial judge is apparent when it is remembered that the baggage man and acting brakeman of the train left his post of duty at the train and assaulted the plaintiff after the latter had crossed an intervening track, and was passing along the station platform. If the brakeman had followed the plaintiff into the waiting room of the station, if there was one, and there committed the assault, or had vindictively assaulted an intending passenger the moment he entered the defendant's station, or if, to use the illustration suggested by appellant's counsel, the assault on the plaintiff on the station platform had been made by a track walker, who, after the train had left, had deserted his duty of inspecting the tracks, the case would not be different in principle. While general expressions may be found in cases outside this commonwealth, which considered apart from the context and the facts of the case may seem to give support to the proposition as above stated, yet a careful examination will show that in most of these cases some other element entered into the decision. At any rate no Pennsylvania case that has been cited, or that we have been able to find after diligent investigation, goes to that extreme. McFarlan v. Penna. R. R. Co., 199 Pa. 408, is not such a case. There the decision was put upon the ground, and no other was suggested by the court as tenable, that the assault upon the intending passenger when in the act of entering the car was committed by an employee whose authority and duty extended to the orderly management of the passengers

entering and leaving the car, and therefore what he did was in the course of his employment. Nor is Artherholt v. Erie Elect. Motor Co., 27 Pa. Superior Ct. 141, such a case. There, it is true, the conductor was acting in violation of a rule of the company requiring conductors to treat passengers civilly, but as he was the employee to whom the company had intrusted the safe carriage of the plaintiff, the company owed to him the duty to protect him against the conductor's unprovoked and wanton assault committed while the plaintiff was being transported, and the conductor was engaged in executing the contract of carriage. The other case cited is Kennedy v. Penna. R. R. Co., 32 Pa. Superior Ct. 623. But if that case is a pertinent authority upon any controverted question involved in this case, it is for the proposition that reasonable, rather than the utmost, is the degree of care required of a railroad company for the protection of intending or departing passengers in the rooms and platforms provided for them. And this distinction as to the measure of care required when the passenger is at such place and when he is being transported or is entering or alighting from the car is generally recognized, and is founded on good reasons. In Dodge v. Boston, etc., Steamship Co., 148 Mass. 207, it is said: "It has sometimes been said that a passenger at the end of his journey retains the same relation to the carrier until he has left the carrier's premises. But there are other cases which indicate that the contract of carriage is performed when the passenger at the end of his journey has reached a safe and proper place, where persons seeking to become passengers are regularly received, and passengers are regularly discharged, and that the degree of care to which he is then entitled is less than during the continuance of his contract, as a carrier of goods is held to a liability less strict after they have reached their destination and been put in a freight house than while they are in transit." See also 26 Am. & Eng. Enc. of Law (2d ed.), 508, 509; 6 Cyc. of L. & Pro., 605. In Hutchinson on Carriers, sec. 1093, we find this statement of the rule applicable to cases where the tortious acts complained of have been committed by the carrier's servants before the relation of carrier and passenger has commenced, or after it has ceased or while the passenger

remains as such on the station grounds: "Where the relation has not commenced, or where it has ceased there can, of course, be no question but that the ordinary application of the rule respondeat superior should apply. And the same result has been reached by the majority of the courts in those cases where the relation of carrier and passenger exists, but the passenger is either waiting for or has just left his train and is still upon the station premises. The reason for this latter view is that, while on the station premises, the passenger is supposed to be able to care for himself in some degree, and the carrier is not obliged to exercise that extraordinary degree of care for his safety that is required while on the train. It is but just, therefore, that the carrier should be held liable for the tortious acts of its servants done in the course of their employment about the station grounds, but not for their malicious and unauthorized acts outside the scope of their employment;" particularly, we add, if such malicious and unauthorized acts are committed upon the station platform or in the station building by an employee whose range of employment is elsewhere and who leaves his post of duty and comes to the platform on the building for the sole purpose of satisfying a personal grudge.

In many instances, whether the negligent or tortious act of a servant was within the scope of his employment is a question of fact for the jury: Guinney v. Hand, 153 Pa. 404. But, of course, if the facts and inferences to be drawn from them are not in dispute, the court may determine the question as matter of law: Brennan v. Merchant & Co., 205 Pa. 258; Murphey v. Phila. Traction Co., 30 Pa. Superior Ct. 87. This is certainly not a case where the court was warranted in declaring as matter of law that the plaintiff was entitled to recover if the assault was unprovoked by misconduct on his part. In our opinion it is a case where the court should have held as matter of law that according to the plaintiff's own testimony as to the place of the assault, the circumstances under which it was committed, and the scope of employment of the employee by whom it was committed, the defendant was not liable.

The judgment is reversed and judgment is now entered for the defendant non obstante veredicto.