# Berryman *v.* Pennsylvania Railroad Company, Appellant.

*Railroads—Negligence—Master and servant—"Respondeat superior"—Malicious act of railroad policeman.*

1. In an action against a railroad company to recover damages for personal injuries where plaintiff testifies that immediately after alighting at a station from one of defendant's trains, on which he had been a passenger, and while he was moving away and behaving in a quiet, orderly way, without having given any occasion for offense or having engaged in any altercation or having been guilty of any violation of law he was the victim of a willful, wicked and malicious assault committed by a policeman in the employ of the defendant company, it is reversible error for the court to refuse binding instructions for the defendant.

*Railroads—Policeman—Presumption—Master and servant.*

2. When it is shown that a policeman is in the employ of a railroad company it may follow presumptively that when present at one of the railroad stations, he is there in the course of his employment, but no presumption arises that every act he does while there is done in the discharge of a duty owing to the company.

3. For a willful or intentional trespass by an employee outside the line of his duty under his employment, the employer is not responsible, even though it be committed while the servant is in the exercise of his employment; but in the latter case its willful and separate character must appear.

Argued April 27, 1910. Appeal, No. 38, Jan. T., 1910, by defendant, from judgment of C. P. Lycoming Co., Dec. T., 1908, No. 130, on verdict for plaintiff in case of William H. Berryman v. The Pennsylvania Railroad Company. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before HART, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $4,750. Defendant appealed.

*Error assigned* among others was in the refusal of binding instructions for defendant.

*Seth T. McCormick*, for appellant.—The railroad company, the master, is not liable for the willful acts of its servant outside of the line of his employment: Shay v. American Iron & Steel Co., 218 Pa. 172; Scanlon v. Suter, 158 Pa. 275; Brennan v. Merchant & Co., 205 Pa. 258; Lotz v. Hanlon, 217 Pa. 339; Nicholas v. Keeling, 21 Pa. Superior Ct. 181; Rudgeair v. Traction Co., 180 Pa. 333; McFarlan v. R. R. Co., 199 Pa. 408; Sarver v. Mitchell, 35 Pa. Superior Ct. 69; Guille v. Campbell, 200 Pa. 119; Murphey v. Rapid Transit Co., 30 Pa. Superior Ct. 87.

The railroad company is not responsible for the malicious act of its servant, while not engaged in the contract of transportation, committed after passenger has alighted: Greb v. Penna. R. R. Co., 41 Pa. Superior Ct. 61; Widener v. Phila. Rapid Transit Co., 224 Pa. 171; New Jersey Steamboat Co. v. Brockett, 121 U. S. 637 (7 Sup. Ct. Repr. 1039); Mulligan v. N. Y., etc., Ry. Co., 129 N. Y. 506 (29 N. E. Repr. 952).

*Thomas M. B. Hicks*, with him *John Houston Merrill* and *Wister M. Elliot*, for appellee.—The defendant is liable under the principle of respondeat superior: Schimpf v. Harris, 185 Pa. 46; Duggan v. B. & O. R. R. Co., 159 Pa. 248; Phila. Traction Co. v. Orbann, 119 Pa. 37; Brennan v. Merchant, 205 Pa. 258; L. S. & M. S. Ry. Co. v. Rosenzweig, 113 Pa. 519; Artherholt v. Erie Elec. Motor Co., 27 Pa. Superior Ct. 141.

The carrier is bound to the exercise of the utmost de-

gree of diligence and care to protect passengers from violence at the hands of disorderly persons, which duty involves the exertion by its employees of every power at their command for the passenger's protection: Pittsburg, etc., Ry. Co. v. Hinds, 53 Pa. 512; Pittsburg, etc., R. R. Co. v. Pillow, 76 Pa. 510; Duggan v. B. & O. R. R. Co., 159 Pa. 248.

OPINION BY MR. JUSTICE STEWART, July 1, 1910:

Assuming, as we must, that the facts are as testified to by the plaintiff, the case may be stated thus: Plaintiff had been a passenger on the defendant company's road, traveling from Wilmerding to Pitcairn on the night of October 30, 1907, in company with one Boyer. He had gone from his home in Pitcairn to Wilmerding that day to hunt, and on his return brought his gun with him. Bledsoe, a policeman or patrolman in the employ of the defendant company, with one Reed, also a patrolman in the same service, boarded the same train at Wilmerding, and occupied the same car with the plaintiff and Boyer. When the train arrived at Pitcairn all these parties alighted, the plaintiff and Boyer first, and immediately following, Bledsoe and Reed. On either side of the place where the train stopped there is a paved platform for the accommodation of passengers. When the plaintiff was in advance of Bledsoe and Reed some fifteen feet, moving over the platform to the subway, he heard Bledsoe say, "Hey there, Berryman." He stopped, and then stepped back. As Bledsoe approached, speaking with Reed, he again stopped, resting the stock of his gun on his foot or on the platform and covering the muzzle with his hand. As he was thus standing, Bledsoe began shooting at him from a revolver while only four or five steps away. The first shot took effect in his abdomen and prostrated him on the platform; another followed entering his groin; two more followed striking his right leg above the knee, a fifth struck him in his thumb. Bledsoe and Reed then ran from the scene, and the plain-

tiff was carried helpless to his home, where upon examination it was discovered that there were seven bullet wounds on his person. Plaintiff had given no occasion for offense; was behaving in a quiet, orderly way; had had no altercation with anyone, and had been guilty of no violation of law. The case was submitted to the jury with this instruction as to the law, "If you find this was an unprovoked assault and battery, or unprovoked shooting, without justification, and occurred in the manner in which the plaintiff has testified it did, and you find at the same time that Bledsoe was in the discharge of his duty as an officer of this railroad company, and was there at the time in the discharge of the duty which he owed to the defendant company, then you can find for the plaintiff." We are at a loss to construct out of these facts any theory which would justify this submission. Accepting the facts as we have stated them, the attack on the plaintiff was a willful, wicked and malicious assault with intent to kill him, or at least inflict upon him grievous bodily injury. The circumstances as detailed would be almost conclusive that the intent was to commit the more serious offense. It having been shown that Bledsoe was a policeman in the defendant company's employ, it may follow presumptively that he was present at the station in the course of his employment, and while there was on duty; but no presumption arises that every act he did while there was done in the discharge of a duty owing to the company. The evidence must show at least circumstances from which a jury can reasonably infer such facts before the employer can be held answerable for the consequences. When it discloses circumstances which admit of no other inference than that the act complained of was both willful and separate from duty, the individual committing the trespass alone is responsible. The law is thus stated by Mr. Justice MITCHELL in McFarlan v. Railroad Co., 199 Pa. 408, "For a willful or intentional trespass by an employee outside the line of his duty under his employment, it is

settled that the employer is not responsible, even though it be committed while the servant is in the exercise of his employment. But in the latter case, its willful and separate character must appear." That the act of Bledsoe was willful and malicious on the plaintiff's showing, admits of no question. Was it something separate from the duty he owed his employer? Let the facts answer. Plaintiff had not been guilty of any violation of law; no information had been lodged against him; he was not disturbing the peace; and manifestly the assault could not have been made with a view to accomplishing his arrest. Plaintiff was peaceably departing from the station on his way to his home, disturbing no one, when he was halted. Without any explanation as to why he was addressed, without a single remark, and while he was resting his gun upon the floor with his hand covering the muzzle, Bledsoe standing only four or five feet away, began the murderous assault upon him which only ceased when every load in his revolver had been discharged, and when he had every reason to believe he had killed his victim. Had death followed the assault, Bledsoe's crime, on this evidence, would unquestionably have been murder in the first degree. Now what is there in the evidence that would support a finding that the assault was committed in discharge of any duty Bledsoe owed to the railroad company? Certainly the defendant company was not requiring the plaintiff's blood at the hands of Bledsoe, its policeman; nor does it appear that the company had any purpose to serve by having his freedom interfered with in the slightest degree. The company had employed Bledsoe to preserve the peace, not to disturb it; and the case shows an entire absence of anything on the part of the plaintiff the doing of which could have concerned the company even in the remotest way. The only inference the evidence allows is that the assault was a malicious one to gratify private vengeance of the assailant, disassociated with any duty Bledsoe owed to his employer.

The cases cited by the learned counsel for the appellee, in support of their contention that Bledsoe in committing this assault was in the line of his duty are inapplicable. They deal either with cases where a special duty towards the injured party, arising out of contract relation was violated, as in the case of a conductor who in collecting fares or tickets from passengers, or in preserving peace and order in his car, commits a willful and malicious assault on a passenger; or, where an officer makes violent assault while engaged in making arrests. In every such case the employee is directly in the line of his duty, in the sense that he is presently engaged in doing the work for which he was employed. It is the duty of the conductor to make his collections, and it is his duty to maintain order in the car for the protection of passengers; and it is as well the duty of the policeman to make arrests when proper occasion arises. It is for such purposes these employees are engaged. If the assault in this case had been made by Bledsoe in the course of an attempt to arrest the plaintiff, it might be contended that it was done when in the line of his duty, and it would be a question for the jury to decide; but, as we have said, every circumstance shows that here no arrest was intended; the plaintiff does not assert that it was, shows no circumstance that indicates it, while Bledsoe positively asserts that it was not. Or if it had been made in the attempt to do anything that Bledsoe was employed to do, as, for instance, keeping the peace, suppressing disorderly conduct, discovering crime, a like result would follow. This is the extent to which the cases cited go. The distinction is too apparent to require further discussion. Ordinarily whether the assault was committed in the line of the servant's duty is a question for the jury; but no question of fact is ever submitted to a jury except it is raised by the evidence. Here there was no evidence which could possibly support a finding that Bledsoe was in the line of duty under his employment when he committed the assault. The fact that it was

committed at the defendant company's station is of no importance. Plaintiff had been a passenger, but that relationship ceased when he alighted at his destination and had so far proceeded on his way as to be out of danger from the movement of the train, or further necessity of relation with the servants of the company. The defendant company thereafter owed him no special duty, no contract relation existing between them. But, take the other view of the case, and assume that Bledsoe had intended an arrest on justifiable grounds. So far he would unquestionably have been in the discharge of the duty of his employment. But the fact that in the attempt he committed a wanton and malicious assault admits of no possible dispute. No jury could find otherwise on this evidence. We have said quite enough as to that. In such case, where the servant in the discharge of a lawful duty willfully and maliciously inflicts injury, he alone is responsible for the consequences. The rule respondeat superior applies only where the injury results from the negligent manner in which the duty is discharged. The master cannot be held responsible for the malicious acts of his servants. In Pittsburg, etc., Ry. Co. v. Donahue, 70 Pa. 119, it was sought to charge the company with liability for injuries inflicted by a conductor on a boy who was a trespasser on the train. In ejecting the boy the conductor struck him upon the head with an iron switch turner and knocked him over. On appeal from the judgment rendered this court said in a per curiam, "We agree with counsel for the plaintiff that for a willful, wanton trespass committed by a conductor the company is not responsible." In Pennsylvania Co. v. Toomey, 91 Pa. 256, it was held that where a conductor of a railroad train, acting in the line of his duty, ejects from the platform of a car, a person who has no right thereon, the company is liable if he has done it in a careless, negligent or reckless manner, but not if he maliciously ejects him therefrom. In these cases the common-law doctrine was applied and is alike applicable

here. With Bledsoe's explanation of the occurrence we have nothing to do, except to remark that it supplies nothing that is wanting in the plaintiff's case. Upon a careful review of the evidence we are of opinion that the defendant company was entitled to an affirmative answer to its first point, which was, that under all the evidence the verdict should be for the defendant. The refusal of this point is made the first assignment of error. The assignment is sustained and the judgment is reversed.