## Ainsley *v.* Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

*Negligence—Master and servant—Railroads—Vice-principal—Conductor—Brakeman—Scope of duties—Contributory negligence —Case for jury.*

1. A conductor, having entire control and management of a railway train, occupies a very different position from the brakemen,

438   AINSLEY *v.* PITTS., C., C. & ST. L. RY. CO., Appellant.

Syllabus.                              [243 Pa.

the porters, and other subordinates employed.  He is in fact, and should be treated as, the personal representative of the corporation, for whose negligence it is responsible to subordinate servants.  The latter are fellow servants in the running of the train under his direction and as to them and the train he stands in the place of and represents the corporation.

2. Under the rules of a railroad company providing that the conductor is "responsible for the movement, safety and proper care of a train, and for the vigilance and conduct of the men employed thereon" and that a brakeman while on duty was "under the direction of the conductor" the conductor comes within the plain words of the Act of June 10, 1907, P. L. 523, as a person to whose orders the brakeman is "bound to conform."

3. A brakeman subject to a rule of the company making it his duty to attend to the brakes "and also subject to the orders of the conductor" is within the scope of his prescribed duties when at the direction of the latter he attempts to make an inspection of a defective brake by getting on the lower step of the platform of a car while the train is in motion.

4. In an action against a railroad company to recover damages for personal injuries sustained by the plaintiff while he was in the employ of the defendant company as a brakeman on a passenger train, the case is for the jury and a verdict for the plaintiff will be sustained where it appears that while the train was in motion it was discovered that something was wrong with one of the brakes; that the conductor of the train ordered the plaintiff to open the trap door on the platform and go down on the lower step for the purpose of locating the brake which failed to work; that when he was so ordered he expressed an unwillingness to comply while the train was in motion and the conductor replied, "That is all right, there is no danger here.  You do as I tell you"; that in pursuance of this order the plaintiff got on the lower step, leaned out to look for the source of the trouble and while doing so was injured by coming in contact with a fence erected between the tracks, of the existence of which he had no knowledge, although the conductor admitted that he himself knew of it.

*Practice, C. P.—Witness—Irrelevant remarks—Withdrawal of a juror.*

5. The court made no error in such case in refusing to withdraw a juror and continue the case, where after plaintiff had repeated certain irrelevant remarks which he had made to the conductor, the trial judge said to the jury, "You will pay no attention to that remark at all; none whatever.  It has nothing to do with the case."

Argued November 1, 1913. Appeal, No. 124, Oct. T., 1913, by defendant, from judgment of C. P. Allegheny Co., Feb. T., 1911, No. 48, on verdict for plaintiff in case of Robert C. Ainsley v. Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before EVANS, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $9,000 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant and to enter judgment for defendant n. o. v., and in refusing to withdraw a juror and continue the case because of certain alleged improper remarks by a witness.

*W. S. Dalzell,* of *Dalzell, Fisher & Hawkins,* for appellant; cited, Ricks v. Flynn, 196 Pa. 263; King v. McClure, 222 Pa. 625; Diehl v. Lehigh Iron Company, 140 Pa. 487; N. Y., L. E. & W. R. R. Co. v. Lyons, 119 Pa. 324.

*Rody P. Marshall,* with him *Thomas M. Marshall,* and *Walter P. Rainbow,* for appellee.—A railroad company is responsible for a negligent act of a conductor where injuries result to their crews under similar circumstances to those in the case at bar: Duggan v. B. & O. R. R. Co., 159 Pa. 248; Chicago, Milwaukee & St. Paul Ry. Co. v. Ross, 112 U. S. 377; Central Railroad Co. v. De Bray, 71 Ga. 406.

OPINION BY MR. JUSTICE BROWN, January 5, 1914:

At the time the plaintiff below was injured he was in the employ of the defendant company as a brakeman on a passenger train. He was on duty on a train which left

the City of Pittsburgh between two and three o'clock on the morning of October 31, 1909, bound for Columbus, Ohio. Shortly after it had started it was discovered that the air brake on one of the cars was not working properly, and the plaintiff got on the lower step of the platform of a Pullman car in an effort to locate the brake which needed attention. While leaning out from that step while the train was still in motion, he was brushed from the car by coming in contact with a fence which the defendant company had constructed between its passenger tracks to prevent persons from crossing over them at grade. He was severely injured, and, from the judgment which he recovered in the court below, the defendant company has appealed.

In determining whether the plaintiff's case was for the jury, the inquiry must be, What facts could be fairly found from the evidence? It justified findings that when it was discovered that something was wrong with one of the brakes, the conductor of the train ordered the plaintiff to open the trap door on the platform of a Pullman car and go down on the lower step for the purpose of locating the brake which failed to work; that when he was so ordered, he expressed to the conductor an unwillingness to comply while the train was in motion, and asked why it was not stopped; that the conductor, replying, said: "That is all right. There is no danger along here. You do as I tell you"; that, in pursuance of this order of the conductor, the plaintiff got on the lower step of the car, leaned out to look for the source of trouble, and, while doing so, came in contact with the fence, of the existence of which he had no knowledge. The foregoing facts were found by the jury, but it is contended that, notwithstanding them, there ought to be no recovery, because (1), whether the conductor was a vice-principal or fellow employee of the plaintiff, the order which he is alleged to have given was beyond the scope of his authority; (2) the act of the plaintiff was beyond

the scope of his prescribed duties; (3) the danger incurred by him was open and obvious.

The conductor whose orders the plaintiff followed had general power and control over the train and all persons on it, with authority to compel obedience to the regulations of the company: Duggan v. Baltimore & Ohio Railroad Company, 159 Pa. 248. His relation to the other employees of the company on duty on the train with him is thus defined by Mr. Justice FIELD, in Chicago & Milwaukee Railway v. Ross, 112 U. S. 377: "A conductor, having the entire control and management of a railway train, occupies a very different position from the brakeman, the porters, and other subordinates employed. He is in fact, and should be treated as, the personal representative of the corporation, for whose negligence it is responsible to subordinate servants. This view of his relation to the corporation seems to us a reasonable and just one, and it will insure more care in the selection of such agents, and thus give greater security to the servants engaged under him in an employment requiring the utmost vigilance on their part, and prompt and unhesitating obedience to his orders. The rule which applies to such agents of one railway corporation must apply to all, and many corporations operate every day several trains over hundreds of miles at great distances apart, each being under the control and direction of a conductor specially appointed for its management. We know from the manner in which railways are operated that, subject to the general rules and orders of the directors of the companies, the conductor has entire control and management of the train to which he is assigned. He directs when it shall start, at what speed it shall run, at what stations it shall stop, and for what length of time, and everything essential to its successful movements, and all persons employed on it are subject to his orders. In no proper sense of the terms is he a fellow-servant with the firemen, the brakemen, the porters and the engineer   The latter are fellow-servants

442 AINSLEY *v.* PITTS., C., C. & ST. L. RY. CO., Appellant.

Opinion of the Court. [243 Pa.

in the running of the train under his direction; as to them and the train, he stands in the place of and represents the corporation." Aside from the relation of the conductor in this case to his injured brakeman, as recognized by a general rule of law, the rules of the defendant company provided that he was "responsible for the movement, safety, and proper care of the train, and for the vigilance and conduct of the men employed thereon," and that the brakeman while on duty was "under the direction of the conductor." Nothing in any of the many other rules of the company makes doubtful in the least degree the clear meaning of these two rules. The learned trial judge correctly said to the jury that the train was not only in charge of the conductor, but that the brakeman was subject to his orders. This was a general rule of law before the passage of the Act of June 10, 1907, P. L. 523; but, if it had not been, the conductor in this case, under the rules of the company, came within the plain words of that act as a person to whose orders the brakeman "was bound to conform." He was, therefore, acting within the scope of his authority when he gave the order which resulted in the injuries to the plaintiff.

Of appellant's second contention, that the appellee was acting beyond the scope of his prescribed duties when he was injured, it is sufficient to say that he was acting under the orders of his superior, authorized by the rules of the company to direct him what to do while on duty. Those same rules provide that it is the duty of a brakeman to attend to the brakes. Nothing appeared in the testimony indicating that this provision applied only to hand brakes, as counsel for appellant contend; but whether it is to be so construed or not is immaterial, in view of the other rule making the brakeman subject to the orders of the conductor while on duty. To whom but the brakeman would the conductor have given an order to try to locate the brake that refused to work? The brakeman, in obeying the order of the conductor,

was as clearly within the scope of his prescribed duties as the conductor was within the scope of his authority in making it.

The construction of the fence between the tracks at Sheridan station was entirely proper as a safeguard against dangers incident to crossing railroad tracks at grade, and the jury were correctly instructed that it was not negligence on the part of defendant to maintain it. The question of the defendant's negligence turned on the act of the conductor in ordering the plaintiff to do what he did. The former denied that he had given any order to the latter, and, in instructing the jury that there could be no recovery if this was so, the learned trial judge said: "If the plaintiff went down onto the steps voluntarily without having been ordered to do so by the conductor, then he took the risk of that act, and he cannot recover in this case. There was no evidence that the general line of his employment required him to make any such an examination of the brakes when the cars were in motion. He cannot recover in this case unless he was ordered by the conductor to go down and make that examination. So that, if you find, as I stated, that the plaintiff went of his own volition, of his own accord, down to examine these brakes, and was injured in so doing, then he cannot recover. On the other hand, if he was ordered to go down to examine this car brake, in the manner in which he says he was, by the conductor, then if that act of the conductor was a negligent act, and the act of the plaintiff in obeying the directions of the conductor was not negligence on his part, the defendant is responsible for the negligent act of the conductor, and the plaintiff would be entitled to recover." The conductor admitted that he knew of the existence of the fence, and the jury having believed the appellee and a corroborating witness, that he got down on the step in pursuance of a positive order from the conductor, the finding was that the giving of the order, under the circumstances, was a negligent act on the part of the

man who had control of the train and authority over the brakemen upon it. This finding, however, was not itself sufficient to entitle the plaintiff to recover, for if the danger which confronted him in complying with the order given him was so imminent that no prudent man would have risked obedience to it, he would have no excuse for assuming the hazard.. The jury might have found that he had rashly assumed the risk of injury, but, on the other hand, after he had told them that he was in ignorance of the existence of the fence, and they believed him as to this, it was a question for them, under all the testimony, to determine whether his own imprudence barred his right to recover. This question having been submitted to them under full and correct instructions, their disposition of it is conclusive on this appeal.

We have not been persuaded that the court erred in refusing to withdraw a juror and continue the case after the plaintiff had repeated remarks which he had made to the conductor. After the remark was made the trial judge said to the jury, you "will pay no attention to that remark at all, none whatever. It has nothing to do with the case."

For the reasons given, the case was for the jury, and as its submission to them was without error, the judgment on the verdict is affirmed.