## O'BRIEN v. PUBLIC SERVICE TAXI CO.
### No. 9942.

United States Court of Appeals
Third Circuit.

Submitted on briefs Oct. 11, 1949.
Decided Dec. 7, 1949.

William A. Bissell, Scranton, Pa., and Stark, Bissell & Griffith, Scranton, Pa., for appellant.

Carlon M. O'Malley, Scranton Pa., and John W. Bour Scranton, Pa., for appellee.

Before McLAUGHLIN and KALODNER, Circuit Judges, and FEE, District Judge.

KALODNER, Circuit Judge.

In this action, the plaintiff seeks redress for injuries alleged to have been sustained while he was riding in a taxicab owned by the defendant and operated by one of its employees. The jury returned a verdict in his favor, upon which judgment was en-

tered, and the District Judge denied the defendant's alternative motions for a new trial or for judgment notwithstanding the verdict. 83 F.Supp. 55.

It should be stated that federal jurisdiction exists here through the diversity of citizenship of the parties, and, since all the events relevant to the action occurred in Pennsylvania, its law is determinative of their rights. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487.

The verdict of the jury requires that the evidence and the inferences therefrom be taken favorably to the plaintiff. We do not deem it of utility to repeat the evidence; rather, it is sufficient to state that our examination of the record leads us to hold that there was adequate evidence to permit the jury to find, either directly or through legitimate inference, the following critical facts:[1]

At about 2 o'clock on the morning of August 16, 1946, the plaintiff was a fare-paying passenger in the defendant's taxicab, then being driven by one Angelo Cali who was, at that time, engaged in executing the contract of carriage. The plaintiff was occupying the front seat to the right of Cali at the latter's request, and there were no other persons in the taxicab. The plaintiff, without having done anything to provoke it, received from Cali a blow on his head of such force as to render him unconscious.

The plaintiff, in seeking to support the verdict on this appeal, asserts that a presumption of negligence arose on proof that he was a passenger in a vehicle operated by the defendant as a common carrier and that he was injured during the carriage. He relies, as did the court below, on Bickley v. Philadelphia & Reading Ry. Co., 1917, 257 Pa. 369, 101 A. 654, although it would appear, from later cases, that the requisites for such a presumption in Pennsylvania are more exacting: see Nebel v. Burrelli, 1945, 352 Pa. 70, 74–75, 41 A.2d 873. However, neither the issue of negligence nor the sug-

gested presumption was submitted to the jury. Indeed, the jury was instructed, in accordance with the defendant's request, that it was bound to return a verdict for the defendant if it did not find that Cali had struck the plaintiff. Accordingly, in our view of the case, the issue of negligence is not of decisive importance.

The learned District Judge exhaustively dealt with the problem of determining the state of the law of Pennsylvania with respect to the liability of the defendant for the assault of a passenger by its employee. There is no dispute that the defendant was a common carrier. Cf. Hughes v. Pittsburgh Transportation Co., 1930, 300 Pa. 55, 150 A. 153. And we agree with the holding of the court below that the rationale of Artherholt v. Erie Elec. Motor Co., 1905, 27 Pa.Super. 141, warrants the result it reached.

In that case, the court said, 27 Pa.Super at pages 146–147: "1. The responsibility of a common carrier for the tortious acts of its servants affecting passengers being transported, does not rest alone upon the doctrine respondeat superior. When a passenger has entered a car of a street railway company and has paid his fare, a quasi contractual relation is established whereby the company assumes certain duties from responsibility for the breach of which it cannot discharge itself by prescribing rules for the government of the conduct of its servants. True, common carriers do not, in legal contemplation, warrant the absolute safety of their passengers, but they are bound to the exercise of the utmost degree of diligence and care, and it has been held that this duty includes the exertion of such power as conductors and other trainmen have to protect passengers from violence of other persons. * * * If the duty of the carrier to afford protection, which he is to discharge through his servants, extends to the prevention of injury from the acts of third persons which it is practicable for the servant in charge to prevent, it is difficult to see why it should be held not to include

---

[1] We deem irrelevant the defendant's contention that Cali and the plaintiff had stopped at various bars and engaged in a "drinking bout" inasmuch as the jury by its verdict found that at the time of the assault the contract of carriage was in effect.

protection against the active participation of the servant himself in an unprovoked and wanton assault upon a passenger, committed while he is being transported, and while the servant is engaged in executing the contract of carriage. According to the great weight of authority the carrier is responsible for such misconduct of the servant to whom it has intrusted the safe carriage of passengers * * * and none of the Pennsylvania cases cited by the appellant's counsel upon this point hold a different doctrine."

The principle enunciated in the Artherholt case was adhered to in Greb v. Pennsylvania R. Co., 1909, 41 Pa.Super. 61, 67–68, where it was held to be a logical conclusion to those cases in Pennsylvania imposing a duty on the carrier to protect passengers from violence of other persons.[2]

The Artherholt case was also cited with approval in Durando v. Philadelphia Rapid Transit Co., 1922, 80 Pa.Super. 65. In Cherillo v. Steinberg, 1935, 118 Pa.Super. 485, 493–494, 180 A. 115, 119, it was said; "Common carrier cases, where the carrier was held liable for the assault of its employee on a passenger, are also distinguishable, because there the liability was based, not so much on the doctrine 'respondeat superior,' as because of the duty of the common carrier to exercise the utmost degree of diligence and care in the transportation of its passengers, and this duty includes protection against the active participation of its servants in a wanton and unprovoked attack upon a passenger, while he is being transported and while the servant is engaged in executing the contract of carriage."

A like result is adopted in the Restatement of the Law of Agency, Section 214 Comment d, and is consistent with the weight of authority.[3]

Patently, non-carrier cases, where a special duty toward the person injured does not exist, are not in point. Other carrier cases merely serve to set out the limitations upon the Artherholt decision. Thus, the special duty dissolves upon termination of the contract of carriage,[4] and there is an indication that its consequences would not attend a passenger who is on the station premises.[5] Similarly, the rule would not seem to be applicable where the employee has left his post and deserted his duty,[6] nor where the employee's duties are not of the class of a conductor, e. g., a porter,[7] a brakeman,[8] or a policeman.[9] Indeed, in another connection the Supreme Court of Pennsylvania has recognized the peculiar nature of a conductor's position: Ainsley v. Pittsburgh, C., C. & St. Louis Ry. Co., 1914, 243 Pa. 437, 90 A. 129. And, insofar as the issue of the instant case is concerned, we cannot say that there is such a difference between a taxicab or bus driver, on the one hand, and a street car or railroad car conductor, on the other, as to justify a difference in result.

We conclude, therefore, that the instant case comes within the specific sphere

2. The leading cases were, and still are, Pittsburgh, Ft. W. & C. Ry. Co. v. Hinds, 1867, 53 Pa. 512, 91 Am.Dec. 224, and Pittsburgh & Connellsville R. Co. v. Pillow, 1875, 76 Pa. 510, 18 Am.Rep. 424.

3. See 10 Am.Jur., Carriers, Sections 1443, 1447; 13 C.J.S., Carriers, §§ 691, 692; 2 Hutchinson on Carriers (3rd Ed., 1906) Sections 1093, 1094, cited with approval in Greb v. Pennsylvania R. Co., 41 Pa. Super. 61, 70–71 (1909); 4 Williston on Contracts (Rev.Ed., 1936), Section 1113.

4. Berryman v. Pennsylvania R. Co., 1910, 228 Pa. 621, 77 A. 1011, 30 L.R.A.,N.S., 1049; see Greb v. Pennsylvania R. Co., 1909, 41 Pa.Super. 61, 70–71.

5. See Greb v. Pennsylvania R. Co., supra, note 3, quoting with approval 2 Hutchinson on Carriers (3rd Ed., 1906), Section 1093.

6. See Greb v. Pennsylvania R. Co., supra, note 3, 41 Pa.Super. at page 69.

7. Rohrback v. Pennsylvania R. Co., 1914, 244 Pa. 132, 90 A. 557.

8. Win v. Atlantic City R. Co., 1915, 248 Pa. 134, 93 A. 876.

9. See Berryman v. Pennsylvania R. Co., supra, note 3, 228 Pa. at page 627, 77 A. 1011, 30 L.R.A.,N.S., 1049. As to policemen in non-carrier cases, see Pilipovich v. Pittsburgh Coal Co., 1934, 314 Pa. 585, 172 A. 136, citing with approval Greb v. Pennsylvania R. Co., supra, note 3.

214

of Artherholt v. Erie Elec. Motor Co.; supra, in that an employee of the defendant who was in charge and to whom the safe carriage of passengers had been entrusted, while he was engaged in executing the contract of carriage, committed an assault upon a passenger being transported at the time.

For the reasons stated, the judgment of the court below will be affirmed.