### PITT v. PENNSYLVANIA R. CO.
Civil Action No. 4518.

District Court, E. D. Pennsylvania.
June 26, 1946.

B. Nathaniel Richter, of Philadelphia, Pa., for plaintiff.

Philip Price, of Philadelphia, Pa., for defendant.

WYCHE, District Judge.

This is an action by the plaintiff under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for the loss of the industrial use of his left eye, sustained, while he was in the defendant's employ as a stower of freight, when he was struck in the eye by a nail, which he was attempting to drive in the door jamb of a freight car of the defendant with a ball-peen or machinist hammer.

The complaint alleges, among other things, that the defendant failed to provide the plaintiff adequate, proper, efficient and safe tools, equipment and appliances with which to do the work assigned to him.

The case was tried before me without a jury. Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

It is admitted that the defendant was at the time of plaintiff's injury engaged in interstate commerce.

The facts are as follows: On April 26, 1944, the plaintiff, forty-two years of age, was employed by the defendant as a trucker, and later as a stower of merchandise in freight cars at the Federal Street Station of the defendant in Philadelphia. On the night of April 26, 1944, about one-thirty o'clock a.m., plaintiff's foreman gave him a ball-peen or machinist hammer and an eight-penny nail and directed him to drive the nail into the door jamb of a certain freight car, on a track next to the platform, for the purpose of suspending therefrom an extension electric light cord to run through freight cars which had been placed door to door on parallel tracks, in order to furnish sufficient light for the stowers to load freight in the cars. The door jamb of the freight car was made of hard oak wood. The nail was supposed to be driven into the door jamb of the freight car as high as the plaintiff could reach so that the truckers would not knock the electric light extension cord down while loading the freight. While plaintiff's usual duties at the time were that of a stower, he had been called upon three or four times before, on account of the scarcity of labor, to drive nails into freight car door jambs for the same purpose.

The plaintiff hit the nail once with the hammer furnished him and started it into the wood, but on his second blow the nail flew back and struck the plaintiff in the eye, inflicting injuries which destroyed the industrial use of his left eye.

There were lights on the station platform about fifteen feet apart which shed enough indirect light in the car for the plaintiff to see the electric light extension cord on the floor and the door jamb of the freight car in which he was driving the nail when injured.

Ball-peen or machinist hammers are made of hard tempered steel with a spring in it which causes the hammer to fly back from the metal after impact. They are

generally used by machinists or sheet metal workers for peening on metal work with the peen-end, and for metal lay-out work with the flat-end with the convex edge. The only hammers furnished by the defendant, or that were available for the use of the plaintiff in driving nails into freight car door jambs as aforesaid, were one and one-half pound ball-peen hammers, and none smaller in size were available for plaintiff's use or provided for him by the defendant.

Oak wood is very hard and very resistent to nail penetration, and if one drives a nail into hard oak wood with a ball-peen or machinist hammer there is a danger of resistence by the oak, and also from the hammer as result of which the nail sought to be driven into the oak wood will tend to bend or fly out. If a ball-peen hammer is used to drive an eight-penny nail into an oak door jamb "you would have resistence at both ends because both are hard. Oak wood is hard and a ball-peen hammer is hard steel."

Carpenter hammers are known as nail or claw hammers, and are made of soft tempered steel to cause the hammer to lay on a nail when struck so as to drive the nail into the wood. They are used by carpenters to drive nails into wood, and to extract nails with the claw-end. No carpenter hammers were provided by the defendant for plaintiff's use, nor were there any available for his use in driving the nail into the door jamb of the freight car.

The plaintiff in using the ball-peen or machinist hammer, supplied him by his foreman, was following the method directed by his foreman when injured. The proper hammer for the job here involved was a carpenter's nail or claw hammer. The ball-peen hammer provided plaintiff is not a proper tool for driving eight penny nails into oak door jambs because the steel is too hard tempered, and the hammer is too heavy and too large.

The Federal Employers' Liability Act, 45 U.S.C.A. § 51, provides: "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

The 1939 Amendment, 45 U.S.C.A. § 54, provides: " * * * any action brought against any common carrier * * * to recover damages for injuries to, * * * any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury * * * resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

45 U.S.C.A. § 53, provides: "In all actions * * * brought against any such common carrier * * * to recover damages for personal injuries to an employee, * * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee * * *."

The plaintiff must be presumed to have been exercising due care for his own safety. Sweeting v. Pennsylvania R. Co., 3 Cir., 142 F.2d 611. He was under the supervision and direction of his foreman, who directed him to do the work in the manner in which it was done. Plaintiff had the right to assume that the ball-peen or machinist hammer, given to him by the foreman of the defendant, was a safe and suitable tool with which to do the work assigned to him, in the absence of knowledge on his part to the contrary. So the question here is, whether the defendant used ordinary care to furnish the plaintiff with an adequate, proper, efficient and safe tool, reasonably suitable for the plaintiff's use in the service he was directed to perform by the defendant.

The rule, as I understand it, is that the employer is under a duty to exercise ordinary care to furnish his employee with tools which are reasonably safe, efficient and suitable for the employee's use

446

in the service to be performed by him. An employer, in my opinion, does not perform his duty when he furnishes his employee with a ball-peen or machinist hammer to do carpenter work, when such hammer is not efficient or suitable for carpenter work. As was said by the Court of Civil Appeals of Texas, in the case of Hines v. Flinn, 222 S.W. 679, 681: "It cannot be said, as a matter of law, without reference to the use to be made of it, that because a hammer * * * is a common and simple appliance, the master, when furnishing it to his servant for use in the discharge of his duties as such, does not owe to him the duty to use ordinary care to see that *it is reasonably suitable and safe for the servant's use in the service to be performed by him*. If the hammer was to be used in a service *not requiring a proper temper*, it might be said that the master was not lacking in care in furnishing one not properly tempered; but we think it should not be so said as a matter of law when the *use to be made of it required a proper temper* when struck against a steel or iron plate to prevent it from being a *dangerous instrument*. Houston & T. C. R. Co. v. Patrick, 50 Tex.Civ.App. 491, 109 S.W. 1097." (Emphasis added.) See also, Panhandle & S. F. R. Co. v. Fitts, Tex.Civ. App., 188 S.W. 528; Dowell v. Wabash R. Co., Mo.App., 190 S.W. 939.

■ In addition to this, the simple tool doctrine no longer applies to actions brought under the Employers' Liability Act. In the case of Jacob v. City of New York, 315 U.S. 752, 62 S.Ct. 854, 856, 86 L.Ed. 1166, the Supreme Court said: "* * *, the contrariety of opinion as to the reasons for and the scope of the simple tool doctrine, and the uncertainty of its application, suggests that it should not apply to cases arising under legislation, * * * designed to enlarge in some measure the rights and remedies of injured employees."

In the case of Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 446, 87 L.Ed. 610, 143 A.L.R. 967, the Supreme Court said:

"We find it unnecessary to consider whether there is any merit in such a conceptual distinction between aspects of assumption of risk which seem functionally so identical, and hence we need not pause over the cases cited by the court below, all decided before the 1939 amendment, which treat assumption of risk sometimes as a defense to negligence, sometimes as the equivalent of non-negligence. We hold that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence.' As this Court said in facing the hazy margin between negligence and assumption of risk as involved in the Safety Appliance Act of 1893, 45 U.S.C.A. § 1 et seq. 'Unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of the risk under another name;' and no such result can be permitted here. * * * Other complications arose from the introduction of * * * 'simple tool,' and * * * concepts into the assumption doctrine. In the disposition of cases *the question of a plaintiff's assumption of risk has frequently been treated simply as another way of appraising defendant's negligence, as was done by the court below in the instant case*.

"It was this maze of law which Congress swept into discard with the adoption of the 1939 amendment to the Employers' Liability Act, releasing the employee from the burden of assumption of risk by whatever name it was called. The result is an Act which requires cases tried under the Federal Act to be handled as though no doctrine of assumption of risk had ever existed." (Emphasis added.) Cf. Griswold v. Gardner, 7 Cir., 155 F.2d 333.

I conclude that the plaintiff suffered his injuries because the defendant was negligent in not exercising ordinary care to supply the plaintiff with a proper, adequate, efficient and safe tool, reasonably suitable for the plaintiff's use in the service he was directed to perform by the defendant.

■ As a result of the accident plaintiff has suffered permanent injuries in the loss of the industrial use of his left eye, and

has lost time from his work from April 26, 1944, to June 17, 1944, and has suffered physical pain and mental anguish, all to his damage in the sum of Seventy Five Hundred ($7,500.00) Dollars.

Formal findings of fact and conclusions of law are being filed herewith.