**GRAYSON v. DEAL et al.**

Civ. A. 6070.

United States District Court
N. D. Alabama. S. D.
July 29, 1949.

Cabaniss & Johnston, Forney Johnston, Paul Johnston and Lucien D. Gardner, Jr., Birmingham, Ala., for plaintiff

John D. Hill, U. S. Atty., W. R. Bradford, Asst. U. S. Atty., Birmingham, Ala., and James P. Garland, Sp. Asst. to Atty. Gen., for defendants.

MULLINS, Chief Judge.

For the years 1943, 1944 and 1945, the Commissioner made deficiency assessments for income taxes against the plaintiff Grayson for some $247,000, which he paid. Plaintiff now sues to recover back some $100,000, or less than half of the deficiency, on the ground that the Commissioner wrongfully refused to recognize, for income tax purposes, the plaintiff's alleged family partnership.

The evidence shows that the taxpayer has since the year 1924 continuously engaged as an individual in the wholesale and retail lumber business at Birmingham, Alabama, under the name of Grayson Lumber Company. He built up a large and lucrative business. His income from the business was, in round figures, $28,000 for the year 1938, $64,000 for the year 1939, $83,000 for the year 1940, $120,000 for the year 1941, and skyrocketed to more than $170,000 for the year 1942.

In August, 1942, he joined in written documents with his wife and oldest daughter (20 years of age) whereby he purported to donate a ⅛ interest in his lumber business to each of them and purported to form a partnership for the purpose of operating the business. These documents stated that the partnership had been formed as of March 2, 1942, and attempted to make the partnership retroactively effective as of that date. On October 1st of the same year, the alleged partnership, by written agreements, was enlarged to include plaintiff's minor son (18 years of age) and his youngest daughter (14 years of age), the plaintiff purportedly giving each of them a ⅛ interest in the business, so that the business was then to be operated as a partnership, the plaintiff having a ½ interest, his wife a ⅛ interest, and each of his minor children a ⅛ interest. The disabilities of non-age of the two older children were removed so that they could contract (Title 27, Section 17, 1940 Code of Alabama), and the wife

was made trustee for the 14 year old daughter.

The plaintiff transferred to the members of his family an interest in the cash on hand, accounts receivable, stock-in-trade and other assets, but retained title in his own name to the plant real estate, plant and machinery that was used in the conduct of the business. At the time of the first agreement he leased the plant and machinery to the alleged partnership for a period of three years—later extended to 10 years—at an annual rental of $3600 plus the payment of taxes on the property which he retained. The agreements provided that the plaintiff was to be the manager of the business at a salary of $500 per month, and indeed he testified on the trial that he saw no reason why he should not have retained the management of "his business". The original agreement provided that as to matters of policy in the conduct of the business, the plaintiff's decision was to be final. When the son and youngest daughter were added as partners, the agreement was modified to submit disputes to arbitration although it is not clear that matters of business policy were to be covered by the arbitration amendment.

In his attempt to prove the validity of the alleged partnership for tax purposes, plaintiff relied upon the written documents and the oral testimony of himself and his witnesses. The plaintiff testified in effect that his primary purpose for entering into the family group arrangement was to provide the members of his family with independent assets or income out of which they could purchase insurance on his life which would be exempt from estate taxes. Such an arrangement would, of course, have benefited the members of plaintiff's family upon his death, but it does not constitute a business purpose insofar as the operation of said lumber business was concerned during the tax years here involved. Obviously, the intent and purpose was to avoid the payment of estate taxes. Tax avoidance, within and of itself, is not a business purpose; otherwise, every family partnership would be impregnable to attack for tax purposes.

The plaintiff also testified that he wanted the members of his family to get experience and that he hoped they would thereby become interested and desire to continue the business. The evidence, however, utterly fails to show that the family members, other than the plaintiff, were capable of rendering any real assistance in the conduct of the business during the tax years in question, and the mere fact that plaintiff wanted them to learn something of the business would not constitute a valid business purpose. Moreover, the evidence shows without dispute that the members of taxpayer's family did not take advantage of the opportunity offered to gain business experience. This conclusively establishes that the wife and children had no intent to benefit the business by acquiring experience during these years.

The plaintiff testified that he did not expect to receive any assistance from them, and when he was asked if he did not conduct the business without the help and advice of his family both before and after the partnership, he replied, "Well to a great extent, that is true", and he said, "I managed it right on". He said that he would confer with the members of his family, including his 14 year old daughter, from time to time, and would say, "I want you children to get some training about how we conduct the lumber business", and that he would discuss the purchase of land or timber with them but tell them, "If you have any objection, I am going ahead with the deal, [but] I would like to know what you think about it." Thus, it is conclusively establishd that plaintiff himself had no real intent to benefit the business during said years by giving the other family members business experience.

The evidence is without dispute that the plaintiff's wife and children did not, during the years involved, contribute any capital originating with them to the alleged partnership, participate in any way in the management or control of the business, or contribute any services, "vital" or otherwise. One or two of the children may have worked in some minor capacity during a summer vacation or so, but they were paid for such services. Indeed, the partnership agreements provided that they were to render only such services as were

convenient, and that they were to be paid for all such services.

The undisputed evidence showing that the wife and children did not contribute any original capital, participate in the management and control of the business or render other vital services, "has the effect of placing a heavy burden on the taxpayer to show the bona fide intent of the parties to join together as partners." Commissioner v. Culbertson, 69 S.Ct. 1210, 1215. Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. This heavy burden of showing a bona fide intent to join together in a business partnership may be overcome if the donated "capital furnished by the alleged partner [is] of sufficient importance to justify his inclusion in the partnership." Whether the alleged partner actually furnished capital is largely determined by "Whether he is free to, and does, enjoy the fruits of the partnership * * *." Culbertson case, supra.

However, where, as here, neither of three usual tests—original capital, management and control, or other vital services—are present and the taxpayer has to stand on the single weak leg of gift capital to show a bona fide intent of the parties to ride "in the same business boat", then undoubtedly the existence of this one single weak support should be shown by evidence that is clear and convincing. The parties should not be permitted to "get into the same boat merely to seek the benefits", but to meet the heavy burden they should be required to show that they also assumed the burdens. This is especially true when we are dealing with a family group arrangement which is subject to close scrutiny—one where the law universally recognizes that the husband-father is the dominant party in the arrangement. The preponderance of the evidence should show an unequivocal, completed gift, that the gift capital was invested or continued in the business, without any strings attached in favor of the donor, that those furnishing the donated capital own it in truth and in fact, and that they are free to and do enjoy and absolutely control the fruits derived from the invested gift capital.

The plaintiff, after testifying that he desired an arrangement whereby his wife and children would have independent funds with which they could buy insurance that would not be subject to estate taxes, and that he wanted them to get experience in the lumber business, also testified that he had another purpose: he just wanted to make them a gift. And he finally admitted that he knew the arrangement would save income taxes if the business continued to prosper. He testified positively that he gave each of them an undivided $\frac{1}{8}$ interest in the business in strict accordance with the provisions of the written partnership agreements; that a capital account was set up on the books showing the investment of each partner; that each member of his family was credited with $\frac{1}{8}$ of the partnership income in strict accordance with the partnership agreements, and that he never received the benefit of a single dollar of that income.

Under the provisions of Section 15 of the partnership agreement, the plaintiff required the members of his family to execute and file for record a power of attorney in favor of him which gave him the same control of all real estate owned by the partnership at the time of its formation or subsequently, as he would have had if no partnership agreement had ever been signed and he were the sole owner of the business.

Under the broad managerial powers carefully retained by Grayson under the provisions of the partnership documents, he had the right to determine the amount and time of disbursements to his wife and children. This control of the partnership income by the plaintiff seriously detracts from his contention that the other family members enjoyed the free use of the income from and owned the donated capital.

As a matter of fact, the whole evidence in this case shows that the plaintiff controlled, conducted and managed this business in the same way and manner both before and after the alleged partnership was formed. While he testified that he never benefited from the income on the

alleged donated capital, the record reflects that Mrs. Grayson received large disbursements from the business, and that they were deposited in a joint bank account which the plaintiff had maintained with her since before the partnership agreement was made. While he says he did not draw any of this money from the joint account, he admits that he could have done so.

When Mrs. Grayson's alleged earnings were deposited in an account subject to plaintiff's check, to say that this income was not under his control would be to deny an obvious fact. Such facts strongly indicate that the economic relations of the husband and wife to this income had not changed. It is true that some three years after this partnership was formed, Mrs. Grayson signed some $35,000 in checks on the joint account which were used to purchase negotiable securities, and the husband says that these securities belonged to Mrs. Grayson and that he had no interest in them; however, it appears that his control is hard to shake off, as from his own mouth we find that he carried a key to the box where these securities were deposited for safe-keeping.

When the plaintiff was called upon to pay the deficiency assessments here involved, the evidence shows that his wife and children promptly and willingly turned over their refund claims totaling some $53,000, and the plaintiff applied these sums to the payment of his own assessments. These refund claims represented the income taxes that the other alleged partners had paid to the government because of monies earned by the business. Of course, plaintiff says that he expects to pay them back when the case is settled. However, he received these large sums from them without even going to the inconvenience of giving them any form of evidence of indebtedness. This is quite in contrast to the meticulous care and great particularity practiced in preparing and signing the various long, complicated, solemn agreements at the time the alleged partnership was formed. When this $53,000 of the alleged monies of his wife and children was needed by Mr. Grayson, it was as readily available as any of his own funds.

■ What does all of the foregoing amount to? Simply this: that I am convinced that the overwhelming weight of the evidence shows that the family group arrangement was not entered into with the bona fide intent of the parties to form a partnership for the purpose of conducting the business of the Grayson Lumber Company. Being so convinced, and feeling that the verdict of the jury in this case in favor of the plaintiff is wrong, and that a judgment based thereon permitting the plaintiff to recover is unjust, it becomes my duty to set aside the verdict of the jury and the judgment entered thereon and grant a new trial of this case.

■ It remains to be noted that a trial judge exercises an entirely different function in passing upon a motion for a new trial than when ruling upon a motion for a directed verdict or for a judgment notwithstanding the verdict. In considering the latter motions the judge passes upon a question of law only: "Whether there is any evidence which, if believed, would authorize a verdict against movant." A motion for a new trial is addressed to the judge's discretion, and he may consider the evidence as a whole, and weigh it, and if he thinks the jury was mistaken or that the verdict is wrong, although supported by some evidence, he should grant a new trial. The ordering of a new trial does not deny the right of trial by jury as is the case when a verdict is directed or judgment is entered non obstante veredicto. Marsh v. Illinois Central Railroad Company, 5 Cir., 175 F.2d 498; Judge Sibley's dissenting opinion in Railway Express Agency, Inc., v. Mallory, 5 Cir., 168 F.2d 426; Howard v. Louisiana & A. Ry. Co., 5 Cir., 49 F.2d 571. In the exercise of the discretion which the law requires, I am impelled to the ruling here made.