**DENNY v. MONTOUR R. CO.**

Civ. A. No. 8864.

United States District Court
W. D. Pennsylvania.

Dec. 7, 1951.

Robert B. Ivory, of Evans, Ivory & Evans, Pittsburgh, Pa., for plaintiff.

Harold R. Schmidt, of Rose, Eichenauer, Stewart & Rose, Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for injuries sustained while plaintiff was employed as a brakeman for the Montour Railroad Company.

It is not in dispute that defendant was engaged in interstate commerce and that plaintiff was performing duties incident thereto at the time of accident.

At the close of plaintiff's case and at completion of all the evidence the defendant moved for a directed verdict. The Court denied the motion and submitted the case to the jury which returned verdict for plaintiff in the amount of $80,000.

The matters before the Court for determination are two-fold:

(1) Motion to set aside the verdict or for judgment notwithstanding the verdict.

(2) Motion for new trial.

> (1) Motion to Set Aside the Verdict
> or for Judgment Notwithstanding
> the Verdict.

The defendant contends:

(1) There is no evidence in the record from which an inference of negligence on the part of the railroad can be drawn.

(2) If said negligence does exist, there is no basis that said negligence was the proximate cause of the accident in whole or in part.

(3) The record conclusively shows that the intervening act of negligence of the plaintiff was the proximate cause of the accident rather than any negligence on the part of the defendant.

A motion for a directed verdict or judgment notwithstanding the verdict under the Federal Rules of Civil Procedure, 28 U.S.C.A., raises a question of law only; that is whether there is any evidence which, if believed, would authorize a verdict against the defendant and the trial court in considering such motion does not exercise any discretion but makes only a ruling of law. Marsh v. Illinois Central R. Co., 5 Cir., 175 F.2d 498; Grayson v. Deal, D.C., 85 F.Supp. 431.

In passing upon a motion to set aside a verdict for plaintiff and to enter judgment for the defendant, evidence in-

738

cluding all reasonable inferences to be drawn therefrom must be taken in the light most favorable to the plaintiff and all conflicts must be resolved in his favor. Waggaman v. General Finance Co. of Philadelphia, Pa., Inc., 3 Cir., 116 F.2d 254; Schad v. Twentieth Century-Fox Film Corp., 3 Cir., 136 F.2d 991; Lukon v. Pennsylvania R. Co., 3 Cir., 131 F.2d 327; Meyonberg v. Pennsylvania R. Co., 3 Cir., 165 F.2d 50; Kraus v. Reading Co., 3 Cir., 167 F.2d 313; O'Brien v. Public Service Taxi Co., 3 Cir., 178 F.2d 211.

■ The court cannot concern itself with the credibility of the witnesses or the weight of the evidence. Roth v. Swanson, 8 Cir., 145 F.2d 262.

The court is not free to reweigh the evidence and set aside the jury's verdict merely because the jury could have drawn different inferences or conclusions, or because the court regards another result as more reasonable. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Masterson v. Pennsylvania R. Co., 3 Cir., 182 F.2d 793.

■ Where uncertainty as to the existence of negligence arises from a conflict in the testimony, or because the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720.

The choice of conflicting versions of the way the accident happened, the decision as to which witness is telling the truth and the inferences to be drawn from the uncontroverted facts and the controverted facts are questions for the jury. If there is a reasonable basis in the record for concluding that it was negligence of the employer which caused the injury, it would be an invasion of the jury's function for the court to draw contrary inferences or to conclude that a different conclusion would be more reasonable. Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Lavander v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.

■ The Federal Employers' Liability Act permits recovery for personal injuries to an employee of a railroad engaged in interstate commerce, if such injuries result in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or *by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works or other equipment.* Lavender v. Kurn, supra.

■ The employer's liability is to be determined by the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances in a situation, or doing what such a person under existing circumstances would not have done. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610; Brady v. Southern Ry. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239.

■ In determining whether there was negligence, the employer's conduct may be viewed as a whole, especially where the several elements from which negligence might be inferred are so closely interwoven as to form a single pattern and where each imparts character to the other. Blair v. Baltimore & O. R. Co., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490.

■ All testimony introduced by plaintiff or defendant should be considered in determining the facts, and hence negligence disclosed by testimony of defendant would be considered notwithstanding plaintiff did not set forth such negligence in his pleading. Stafford v. Roadway Transit Co., D.C., 70 F.Supp. 555, 557, affirmed, 3 Cir., 165 F.2d 920, 921.

The issues thus presented require a statement concerning the manner in which plaintiff received the injuries which are the basis for this action.

The defendant railroad served a mine of the Pittsburgh Consolidation Coal Company known as its Westland Mine. A track, known as the "No. 2 Track," extended from a point some distance west of the mine tipple, under the tipple itself

and to a point east thereof. North of No. 2 track and roughly parallel to it, lay No. 1 track which, however, passed to the north of the tipple and not under it. Both tracks were on a descending grade for east bound traffic. There was a cross-over between the two tracks, by means of which east bound cars could be shunted from No. 1 track to No. 2 track, coming upon the latter at a point just west of the tipple.

Plaintiff Denny was head brakeman of a crew engaged in a shifting operation at the mine. The crew consisted, in addition to plaintiff, of a conductor, a flagman, an engineman and a fireman. After completing various maneuvers which had no bearing upon the happening of the accident, they moved a draft of cars in an eastwardly direction toward the tipple along No. 2 track. The locomotive was at the west end of the draft and was moving backward.

At the time there were two empty cars extending from No. 1 track over the cross-over and onto No. 2 track and under the tipple. These cars were for use at the tipple and were on what is known as "the rope," a cable attached to the cars by means of which they could be held in place or at the wish of the mine's boom operator could be allowed to descend the grade. In that way, when a car was filled with coal, it was dropped down and the following empty car was placed in position under the tipple. These cars, of course, blocked east bound traffic on track No. 2 at the cross-over. Under the evidence, defendant had no control over or any responsibility for the location of the two standing cars.

It was the object of the train crew to place as many empty cars as possible on track No. 2 between the cross-over and the track's western terminus and, in order to do that, they wanted to push their draft until its eastern end was fairly close to the cross-over. Plaintiff was at the head end of the draft in the direction in which it was moving. The contour of the track was such that hand signals given by him could not be seen by the engineman. The conductor stood at a point between the head

and the locomotive for the purpose of relaying signals. Hand brakes had been set on some of the cars so that is was necessary for the engine to push the train even though it was proceeding down grade. Because the hand brakes had been set, there was no slack in the train.

Plaintiff gave the steady signal or notice that the train was arriving at its destination when the lead or end car was approximately 200 feet from the two cars standing on the cross-over track. At this point plaintiff was walking beside the last car of the moving train. When the lead or end car was approximately 60 feet from the standing cars, plaintiff gave the stop signal to the conductor which was immediately relayed to the engineer. The train was moving at approximately two miles per hour and when it reached a point approximately 20 feet from the standing cars, plaintiff realized a collision would occur if the train was not stopped.

Air was coupled through the train and there was at the eastern end of the lead car, near the drawbar, a valve, by opening which plaintiff could apply air brakes throughout the entire train and bring it to an immediate stop. That valve was operated by means of an angle cock which had a safety device to prevent it from jolting open or from being opened accidentally. This device made it necessary for one operating the angle cock to first raise the handle and then turn it.

In this emergency plaintiff endeavored to open the angle cock which would have applied the air brakes on every car. The valve failed to open and before another attempt could be made to open the valve, plaintiff was pinned between that moving train and standing cars. The train was brought to a stop by the engineman when the nearest parts of the two cars were approximately three inches apart and plaintiff was between them.

The accident occurred between 6:00 and 7:00 A.M., on the morning of April 20, 1949. Weather conditions were normal and daylight signals were being used by the members of the crew.

It has been calculated with a mathematical certainty that a moving object at two

miles per hour will travel 2.93 feet a second. In construing the testimony in a light most favorable to the plaintiff, when the steady signal notice (make ready to stop since arrival at destination was being reached) was first given by plaintiff to the conductor which was immediately relayed to the engineer, the last car of the train was 200 feet from the place of the accident. If you traveled 200 feet at two miles per hour, it would take approximately 65 seconds.

When the stop signal was given by plaintiff to the conductor, who in turn immediately relayed the signal to the engineer, the last car of the moving train was approximately 60 feet from the point of the accident where the two cars were standing on a switch. Since the train was traveling 2 miles per hour, the engineer had approximately 20 seconds to bring the train to a stop. When the moving train reached the point approximately 20 feet from the point of the collision, plaintiff believed that an accident was inevitable although at that point the engineer had approximately 7 seconds to stop the train. Plaintiff believed it was his responsibility under the rules and regulations which governed his duties to protect the property of the company and he endeavored to open the angle cock, which was a mechanical contraption on the last car, which by opening would have caused an emergency stop. Difficulty arose with this piece of equipment and as a result thereof due to the failure of the equipment to work and the failure of the engineer to stop the train after due notice had been given, plaintiff was pinned between the two cars.

Plaintiff had reasonable cause to believe the engineer would stop the train.

█ It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save the property of the railroad from harm and damage. Restatement of the Law, Torts, § 472.

█ Whether or not the actions of plaintiff amounted to contributory negligence in view of the circumstances was for the jury.

█ There was ample evidence to require submission to the jury the question of whether or not the negligence of the engineer in failing to promptly heed the signal and to bring the train to a prompt stop, coupled with the failure of the emergency valve to work properly, which factors combined to make the place where plaintiff was working unsafe, in whole or in part caused plaintiff's injury.

It is not unreasonable to conclude that the conditions under which the plaintiff was required to do his work and the manner in which his fellow employees performed the responsibilities of their assignment constituted an unsafe and dangerous working place and that such conditions were a proximate cause of the accident in whole or in part.

Furthermore, there is evidence in the record to show that the defendant did not provide reasonably safe appliances with which to work which was a proximate cause of the accident.

The motion for arrest of judgment or for judgment notwithstanding the verdict must be refused.

### (2) Motion for New Trial

In addition to the general allegations that the verdict was against the evidence, the weight of the evidence and the law, it is contended:

(1) That the Court erred in giving instructions to the jury that a duty rested on the defendant to provide the plaintiff employee a safe place in which to work, and reasonably safe appliances and tools with which to work.

(2) That the Court made prejudicial remarks when counsel for the plaintiff made certain comments relative to the evidence in which counsel for the defendant had disagreement as to what the record contained relative thereto.

(3) That the verdict was excessive.

It is not claimed that the instructions given by the Court were in error or that they failed to state correct principles of law. It is contended, however, that the instructions as to the duty of the defendant to provide plaintiff employee a reasonably safe place in which to work and safe appliances with which to work should not

have been given because (1) there was no evidence in the case to which the instructions could be applicable and (2) the complaint did not charge a breach of the duty to furnish reasonably safe appliances with which to work.

The Act provides that the railroad shall be liable in damages to any person suffering injury if such injury results in whole or in part from the negligence of any of the officers, agents or employees of such carrier, *or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works or other equipment.* 45 U.S.C. A. § 51.

■ The rights which the Act creates are federal rights protected by federal rather than state law, and these federal rules have been largely fashioned from the common law except as Congress has written into the Act different standards. In common law it is the duty of the employer to furnish an employee with a safe place to work and that rule is deeply ingrained in federal jurisprudence. It is a duty which becomes more imperative as the risk increases, and reasonable care becomes then a demand of higher supremacy, and yet in all cases it is a question of the reasonableness of the care—reasonableness depending upon the danger attending the place or the machinery. That duty of the carrier or the railroad is a continuing one from which the railroad is not relieved by the fact that the employee's work at the place in question is fleeting or infrequent. Bailey v. Central Vermont Ry., Inc., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444.

The complaint alleges, among other things, various items of negligence and that the defendant failed to provide the plaintiff a reasonably safe place to work.

Plaintiff offered evidence, to which no objection was made, as to the efforts which he extended to apply the hand air brake to the equipment which was involved in the accident, from which an inference could be drawn that the hand air brake equipment was faulty. Furthermore, negligence could be inferred from the failure of the engineer to bring the train to a stop after due and proper warning had been given as provided in railroading to bring a train to a stop, that the braking equipment in the engine was faulty in one respect or the other, or the train could have been stopped.

The defendant offered proof to establish the responsibilities and duties of the plaintiff relative to the mechanical appliances, tools, supplies and facilities which were being used on the equipment involved in the accident, and that the plaintiff's conduct had been in violation of said rule.

■ A party may be relieved of the burden imposed upon him by the fact that the necessary proof is introduced by his adversary. Otto v. Western Saving Fund Society, 343 Pa. 615, 621, 23 A.2d 462; Kilian v. Stackpole Sons, Inc., D.C., 98 F. Supp. 500.

■ A railroad company must furnish its employees a reasonably safe place to work, but is not required to contemplate absolute elimination of all danger but only the elimination of those dangers which could be removed by reasonable care on part of the employer. Raudenbush v. Baltimore & O. R. Co., 3 Cir., 160 F.2d 363; Williams v. Atlantic Coast Line R. Co., 5 Cir., 190 F.2d 744.

■ The rule which requires the railroad to furnish its employees with a reasonably safe place to work does not have reference only to the physical condition of the place itself but also has reference to the negligent acts of the fellow employees. Bailey v. Central Vermont Ry., Inc., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Griswold v. Gardner, 7 Cir., 155 F.2d 333.

An employer has a duty under the Act to exercise ordinary care to furnish its employees with tools which are reasonably safe, efficient and suitable for the employee's use in the service to be performed by him. Pitt v. Pennsylvania R. Co., D.C., 66 F.Supp. 443, affirmed, 3 Cir., 161 F.2d 733; Williams v. Atlantic Coast Line R. Co., supra.

Negligence as used in this Act is a violation by carrier of its duty to use reasonable care in furnishing its employees with a safe place to work, and safe tools and appliances with which to work. Spen-

742

cer v. Atchison, T. & S. F. Ry. Co., 92 Cal.App.2d 490, 207 P.2d 126; Lowden v. Bowen, 199 Okl. 180, 183 P.2d 980; Lavender v. Kurn, supra; Williams v. Atlantic Coast Line R. Co., supra.

██ I believe that the doctrine of negligence which is to be applied under the Act is premised on the duty of the railroad to provide its employees with a reasonably safe place in which to work and reasonable safe appliances with which to work. Being fundamental in disposing of the rights of the parties, the Court was required to so charge regardless of the allegations in the complaint in order that the doctrine of negligence could be applied to the facts. Williams v. Atlantic Coast Line R. Co., supra.

██ In this respect the plaintiff did allege that the defendant failed to provide a reasonably safe place in which to work but did not allege the defendant failed to provide reasonably safe appliances with which to work although testimony was presented without objections to so establish. However, the defendant introduced evidence as to the responsibilities of the plaintiff in connection with the appliances installed on the equipment which was involved in the accident. Both plaintiff and defendant, therefore, raised the question as to whether or not reasonably safe appliances were made available and, therefore, required instructions to the jury as to the rule of law to be applied in their determination as to whether or not the defendant was negligent.

In addition thereto, the complaint could have been amended to correspond with the proof as to the failure of the railroad to provide safe appliances with which to work since the defendant would not have been able to offer any different testimony if the complaint had been so amended. Griswold v. Gardner, 7 Cir., 155 P.2d 333.

The duty of the defendant to provide the plaintiff a reasonably safe place in which to work and reasonably safe appliances with which to work was fundamental and basic to the application of the doctrine of negligence.

The instructions given relative thereto were proper and a necessity.

██ Defendant contends that plaintiff's counsel made prejudicial remarks to the jury in his argument and in connection therewith prejudicial remarks were made by the Court. In order that a full understanding will exist as to the basis of this complaint, the colloquy between counsel and the Court is as follows:

### Part of Argument

"Mr. Ivory: He was given this book of rules and it was left up to him how to interpret it. And yet they don't hesitate one bit when they feel that they can crawl out of liability in a case and avoid paying some money to this seriously injured man—they don't hesitate one minute to throw those rules at him and say, 'You violated the rules,' rules that were never explained to him. They come along and say, 'Now, here is what he should have done if he was going to apply the air.'

"As I understand the testimony, here is what they say. He had a brake club. It was thirty inches long. He should have— it was all right for him to be beside the car to begin with, but when he saw there was a collision imminent, coming for sure, as he thought, he should have climbed up on the stirrup—

"Mr. Schmidt: If the Court please, I'd like to object at this point. I don't like to interrupt counsel. This is a point we covered yesterday. There is no testimony on the record that he should have done it. We went over the record and checked and the testimony was that he could have done it. There is no use of the word 'should.' We went all over that. That is misrepresenting the fact. It is prejudicial, and I ask the Court to so instruct the jury.

"The Court: Counsel for the plaintiff will be permitted to make any reasonable argument that he feels appropriate, under all the evidence and the inferences which he thinks should be deduced from the evidence. The jurors are the sole judges of the facts and in the final analysis the jurors are the ones who with finality draw the inferences and deductions. I see nothing wrong in the argument. Your motion is refused.

"Mr. Ivory: That reminds me of an old story down on the farm where I was raised * * *"

(Mr. Ivory continued his address to the jury. Balance of argument not relevant to the question raised.)

A careful scanning of the testimony indicates that the comment made by counsel for plaintiff was not a misstatement of the facts. The witness, whose testimony was being referred to, did use the word "should" on one occasion but on others used the word "could":

"Q. Will you point out to the jury the place where you say a brakeman could ride on the car and from which he could open the angle cock with the brake club? A. Mr. Ivory, the picture doesn't take in this side of the car where the brakeman *should* be standing." (Emphasis supplied.) (Page 336 of testimony.)

In addition, the Court impressed on the jury at the time the question arose and in the general charge that the jurors were the sole judges of the facts and the inferences to be drawn therefrom.

## Excessiveness of Verdict

Plaintiff was 40 years of age at the time of trial, was married and had two small children. He was a high school graduate and had attended college for 3½ years. His prior work record included janitor work at a school, work in a service station, in an A. & P. store, and on a farm. He had gone to work for the Montour Railroad in January 1945, at which time he passed a physical examination. His health prior to the accident had been excellent. Aside from a tonsillectomy as a child and an appendectomy in 1929 and one or two minor accidents from which he promptly fully recovered, he had had no illnesses. His record while in the employ of the defendant showed that during the 18 months before the accident he had worked overtime in each of the 36 bi-weekly pay periods except one, that being a period in which there was no work available because of a strike.

Plaintiff's damages to the time of trial consisted of pain, suffering and inconvenience, and medical and hospital bills totaling $1,122 and loss of wages (twenty-two months at $300 per month) of $6,600. His total monetary loss was $7,722. This does not include the cost of the hospitalization, etc. furnished by the defendant which, by stipulation of counsel, amounted to $2,350 and is to be deducted from the amount ultimately paid by the defendant.

Since the accident the plaintiff has been severely crippled, ridden with constant pain, unable to work and compelled to wear an uncomfortable brace and to sleep, when sleep comes upon him, in a plaster cast. He has been rendered incapable of moving about in a normal manner, being forced to walk in an ungainly fashion, throwing his body and limbs about and attracting the pitying attention of those who see him. He will require further medical care and attention, and it is extremely improbable that he will ever again be able to engage in a gainful occupation. Plaintiff's life will always be one filled with pain, suffering and inconvenience. In short, he is and will be a truthfully pitiful figure of a man. In view of the extreme monetary loss which the plaintiff has experienced, the impairment or total loss of earning power, and the severe pain, suffering and inconvenience which has been and will continue for the balance of his life, it is not unreasonable to assume that the jury made some reduction for contributory negligence in the verdict which was returned.

 The court should not set aside a verdict on the ground that it is excessive unless it is so high as to shock the conscience. In the absence of any showing that the jury was biased or acted capriciously or unreasonably, the court will not interfere with the verdict. Foresman v. Pepin, D.C., 71 F.Supp. 772, affirmed, 3 Cir., 161 F.2d 872.

 It is my considered judgment that the verdict rendered was not against the evidence, weight of the evidence or the law, and I must assume that the jury followed the instructions of the court. Boice **v.** Bradley, D.C., 92 F.Supp. 750, 751.

Accordingly, the motion to set aside the verdict for the plaintiff and to enter judg-

744

ment for the defendant, and the motion for a new trial are denied.

It has been stipulated and agreed between the parties that the verdict received by the plaintiff and any judgment entered thereon should be reduced in the amount of $2350.

An appropriate order is entered.